No. 82-05

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

DORCAS A. ROSE,

        Plaintiff and Appellant,

  -vs-

JAMES S. ROSE,

        Defendant and Respondent.

_____

Appeal from:  District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
John S. Henson, Judge Presiding.

Counsel of Record:

    For Appellant:

        Milodragovich, Dale & Dye, Missoula, Montana
Lon J. Dale, Missoula, Montana

    For Respondent:

        Skelton & Cooley; Robert E. Skelton, Missoula,
Montana

_____

Submitted on Briefs:  July 9, 1982

Decided:  October 7, 1982

Filed:  OCT 7 - 1982

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

On November 9, 1981, the Fourth Judicial District Court entered judgment construing a warranty deed by which Dorcas Rose transferred her interest in the Thunderbird Motel, Missoula, Montana, to James Rose. The District Court concluded that road signs, sign permits and leasehold interests in the lands upon which the signs are located, passed as appurtenances to the Thunderbird Motel under the deed. The District Court also concluded that James Rose was entitled to recover $1,944.00 from Dorcas Rose as a result of an accounting settlement of the parties' previous partnership interests in the Thunderbird Motel. Dorcas Rose appeals.

The issues to be reviewed are:

(1) Whether the District Court erred in concluding that four road signs, sign permits and leasehold interests in separate noncontiguous land upon which the signs are affixed passed as appurtenances to the Thunderbird Motel property under warranty deed?

(2) Whether the District Court erred in concluding that as a result of the accounting settlement between parties' partnership interests James Rose was entitled to one thousand nine hundred forty-four dollars ($1,944.00)?

We find no error. The District Court's judgment is affirmed.

During the course of the parties' twenty-six year marriage and joint operation of the Thunderbird Motel, four signs were constructed on noncontiguous leased property for advertising purposes. The signs were located between one-quarter and three miles from the Thunderbird Motel.

Upon dissolution of the Rose marriage on May 19, 1976, the parties' real and personal property was distributed as follows:

-2-

"That all real and personal property acquired and accumulated by [Dorcas Rose] and [James Rose] shall remain in the ownership of the parties as the same are now titled, by mutual agreement, except the real and personal property located at Missoula, Montana, known as the Thunderbird Motel, which property has been sold to [James Rose] by [Dorcas Rose] and said property shall remain the sole property of [James Rose] subject to a mortgage in favor of [Dorcas Rose]." Missoula County District Court, Cause No. 43982, Final Decree of Dissolution, dated May 19, 1976.

The Thunderbird Motel sale, referred to therein, had been finalized six days earlier by execution of five written documents: a note, warranty deed, trust indenture, mortgage and escrow receipt. Nowhere in the five sales instruments was there any specific reference to the billboards, sign permits or correspondent leasehold interests. Nor was there a sales or property settlement agreement executed which inventoried the specific real and personal property that was to pass as a result of the sale.

At the time of sale and dissolution, Dorcas Rose had possession of the sign permits and lease agreements. The signs themselves advertised the Thunderbird Motel.

Less than one year later Dorcas Rose instituted an action to prevent James Rose from using the tradename, "Thunderbird Motel." In a counterclaim James Rose sought delivery of the four sign permits and leases as well as recovery of monies Dorcas Rose converted from the parties' Broadway Motel checking account. The Broadway Motel was jointly owned and operated by the Roses until June, 1977, when James Rose sold his interest therein to Dorcas Rose.

Dorcas Rose did not prevail upon her claim. Instead the District Court ruled that James Rose was the sole owner of the tradename, "Dorcas Rose having conveyed all her right, title and interest in the business known as the Thunderbird Motel, to [James Rose] on May 13, 1976." The District Court made no specific ruling on the counterclaim.

-3-

The counterclaim came to trial in April, 1981. After hearing the testimony presented by the parties the District Court rendered the decision which forms the basis of this appeal.

Dorcas Rose believes that the District Court was mistaken when it implicitly relied upon certain water rights cases as proper precedent for the sign question. Dorcas Rose submits that those cases are not instructive because they involve things which are by statute defined to be appurtenances.

The statutory definition of appurtenance is set forth in section 70-15-105, MCA, wherein it states:

> "Incident or Appurtenance Defined. A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way or watercourse or of a passage for light, air, or heat from or across the land of another."

Whether or not a thing is an appurtenance under the statutory definition is a question of fact. Yellowstone Valley Co. v. Associated Mortgage Investors (1930), 88 Mont. 73, 290 P. 255.

Although road signs, sign permits and leasehold interests of this nature have few characteristics in common with the things listed as appurtenances under section 70-15-105, MCA, the District Court properly concluded that in this instance the real and personal property interests represented by the sign permits and leases were used for the benefit of the Thunderbird Motel property and therefore passed as appurtenances. The District Court not only found that the billboards advertised the Thunderbird Motel at the time of sale and dissolution but that the signs, sign permits and leases were acquired as a result of the parties' joint efforts and expenditure of Thunderbird Motel monies and that they were carried as assets on the Thunderbird Motel books.

It is apparent from the District Court's decision that the parties did not regard the signs, sign permits and leases as separate property of Dorcas Rose which, coincidentally, was being used to benefit their jointly-operated motel business located on the conveyed property. The parties treated the signs, etc., as an integral part of the motel business as is evident from the trial court's finding that as recently as 1975 the parties advertised the Thunderbird Motel property as including "four well-placed road signs." In this circumstance, it was proper to conclude the contested personalty was appurtenant to the motel at the time of sale.

The second error claimed by Dorcas Rose involves the District Court's findings related to a settlement of the parties' partnership interests as a consequence of the sale and divorce. Dorcas Rose contends that there is insufficient evidence to support the trial court's finding that she converted nine thousand dollars ($9,000.00) from the parties' joint Broadway Motel checking account to her own use. Ms. Rose maintains that the only evidence concerning the accounting between the parties' Thunderbird Motel and the Broadway Motel accounts was presented by her expert accountant and that his testimony compels a finding and conclusion that in fact James Rose owes four thousand four hundred dollars ($4,400.00) to Dorcas Rose.

The trier of fact is free to disregard the expert testimony of one party and adopt the testimony of the other party as long as the other party's evidence is credible and substantial. Jacques v. Montana National Guard (1982), ____ Mont. ____, ____ P.2d ____, 39 St.Rep. 1565, 1571-1572. Here, James Rose testified that Dorcas Rose impermissibly withdrew nine thousand dollars ($9,000.00) from their joint Broadway Motel account and used such monies for her own

benefit. He presented a signed countercheck to substantiate his testimony. Ms. Rose's own expert testified that about one-half of that sum was expended for personal expenses. It was but his opinion that the remainder was used for business purposes through means of a second separate Broadway Motel account established by Dorcas Rose. The testimony of Ms. Rose's certified public accountant did not conclusively establish that the monies were not diverted for nonbusiness uses.

The proper function of the trial court is to assess the evidence, ascertain the witnesses' credibility and render its findings based upon substantial credible evidence. If that is accomplished, this Court cannot overturn its decision. Crabtree v. Crabtree (1982), ____ Mont. ____, ____ P.2d ____, 39 St.Rep. 1668. Here, finding no insufficiency of evidence, we affirm.

_____
Justice

We concur:

_____

_____

_____

_____
Justices