No. 83-290

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

DUANE R. BENDER, d/b/a PALM TREE
CONSTRUCTION,

        Plaintiff and Appellant,

  -vs-

CARL ROOKHUIZEN, et al.

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
             In and for the County of Yellowstone,
             The Honorable William J. Speare, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Hibbs, Sweeney, Colberg, Jensen and Koessler; Horton
        B. Koessler argued, Billings, Montana

    For Respondents:

        Wright, Tolliver & Guthals; Kenneth D. Tolliver argued,
        Billings, Montana

---

        Submitted:  July 3, 1984

          Decided:  July 26, 1984


Filed: JUL 1984

*Ethel M. Harrison*
---
             Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The plaintiff, Duane R. Bender d/b/a Palm Tree Construction, appeals from a summary judgment entered on April 1, 1983 in the District Court of the Thirteenth Judicial District for the defendants, Carl Rookhuizen d/b/a Rookhuizen Construction, the Housing Authority of Billings, Universal Surety Company and the United States of America. We reverse the judgment of the District Court.

In March, 1981, Rookhuizen Construction (Rookhuizen) was awarded the general contract to construct a housing project known as Montana Housing Authority project MT 1-5 for the Housing Authority of Billings (Housing Authority), a public nonprofit Montana corporation. Prior to entering into the general contract with Rookhuizen, the Housing Authority hired E.F. Link & Associates architects, to prepare the necessary plans and specifications for the project. The entire project required and received approval from the Housing and Urban Development (HUD) office of the United States Government. E.F. Link & Associates hired various consultants for different phases of the project including the site preparation and mechanical work. The work of these individual consultants was compiled into a project Specifications Book and corresponding set of drawings.

Subsequently, Rookhuizen entered into four subcontracts for completion of various portions of the project including a subcontract entered into on April 22, 1981 with Palm Tree Construction (Palm Tree) for the project's utility work. The terms and conditions of the

subcontracts between Rookhuizen and the various subcontractors were set forth in the Specifications Book and corresponding drawings.

On August 21, 1981, a dispute arose between the utility subcontractor, Palm Tree, and Rookhuizen over whose responsibility it was to connect the water and sewer lines to the individual housing units of the project. Palm Tree claimed the mechanical subcontractor was responsible for making the final connections. Palm Tree based this assertion on its interpretation of the specifications and corresponding drawings. Rookhuizen maintained the contract between the parties required Palm Tree to complete the connections. On the day the dispute arose Rookhuizen made a written demand upon Palm Tree to connect the lines but Palm Tree refused.

Thereafter, Larry Marshall, an employee of E.F. Link & Associates and ~~contract administrator~~ architectural representative for the project, became aware of the dispute and was asked to render an opinion as to who was responsible for the connections. The record does not indicate which party or parties requested Marshall's opinion. In a letter to Rookhuizen, Marshall expressed the opinion that the mechanical subcontractor, not Palm Tree, was responsible for the disputed work.

Subsequently, Rookhuizen hired another subcontractor to connect the lines and then set-off that subcontractor's charges against the balance owed Palm Tree under the parties' subcontract.

On October 27, 1981, Palm Tree filed a complaint against Rookhuizen, the Housing Authority and Universal Surety Company alleging breach of contract and seeking

$17,750.32 the amount Rookhuizen set-off against the balance owed Palm Tree plus certain sums for water expenses and completion of a meter vault lid. In addition to its complaint, Palm Tree filed a mechanic's lien, lis pendens and mechanic's lien forclosure action against the Housing Authority's property. On November 16, 1981, Palm Tree filed an amended complaint naming the United States as an additional defendant. The United States, through HUD, had entered into a trust agreement with the Housing Authority to secure completion of the project and payment on any bonds or notes issued to finance the work.

On February 17, 1982, Rookhuizen filed its answer to Palm Tree's amended complaint counterclaiming for damages due to breach of contract and the filing of a wrongful lien. Rookhuizen claimed Palm Tree's refusal to complete the work had caused damages in the amount of $25,000.

Thereafter, the parties filed cross motions for summary judgment. On November 23, 1982, the District Court denied Palm Tree's motion for summary judgment and granted Rookhuizen's, reserving the issue of Rookhuizen's liability for Palm Tree's water expenses for trial. In granting Rookhuizen's motion for summary judgment, the District Court concluded that Palm Tree breached its contract with Rookhuizen when it failed to hook up the water and sewer lines; that Palm Tree's lien on the Housing Authority's property was improper; and that Rookhuizen was entitled to attorney's fees.

On December 3, 1982, Palm Tree filed a motion to alter and/or amend the District Court's findings of fact and conclusions of law or, in the alternative, a new trial. On

-4-

January 7, 1983, the District Court clarified its original findings and set the issue of water expenses and Rookhuizen's damages for trial on April 1, 1983. On March 31, 1983, the parties stipulated to an accounting and judgment was entered for Rookhuizen on April 1, 1983, in the amount of $2,555.13. Thereafter, Palm Tree filed its notice of appeal.

The plaintiff, Palm Tree raises four issues on appeal:

(1) The District Court erred in ruling that the contract between Palm Tree and Rookhuizen imposed a duty on Palm Tree to hookup the water and sewer service lines.

(2) The District Court erred in not finding the decision of Larry Marshall, the ~~contract administrator~~ architectural representative, as controlling the dispute.

(3) The District Court erred in ruling that the mechanic's lien filed by plaintiff was improper.

(4) The contract was ambiguous and therefore should have been construed against Rookhuizen.

In granting Rookhuizen's motion for summary judgment, the District Court held that Palm Tree was obligated to make the necessary connections of the water and sewer service lines according to two provisions of the general contract that provided:

> "Article 3. Contract Documents. The Contract shall consist of the following component parts:
> a. This Instrument
> b. Bidding Documents
> c. Conditions
> d. Technical Specifications
> e. Drawings
> f. Supplementary Drawings and Schedules
> This instrument, together with other documents enumerated in this Article 3, which said documents are as fully a part of the Contract as if hereto attached or herein repeated, form the Contract. _In_

-5-

the event that any provision of any component part of this contract conflicts with any provision of any other component part, the provision of the component part first enumerated in this Article 3 shall govern, except as otherwise specifically stated. (Emphasis added.)

" . . .

"13. Specifications and Drawings

"a. Anything mentioned in the Technical Specifications and not shown on the Drawings, or shown on the Drawings and not mentioned in the Technical Specifications, shall be of like effect as if shown on or mentioned in both. In case of difference between Drawings and Technical Specifications, the Technical Specifications shall govern. In case of any discrepancy in Drawings, of Technical Specifications, the matter shall be immediately submitted to the Architect without whose decision said discrepancy shall not be adjusted by the Contractor, save only at his risk and expense." (Emphasis added.)

" . . .

The District Court then relied on certain portions of the Technical Specifications of the parties' subcontract to conclude that Palm Tree was responsible for the hookup of the water and sewer service lines:

PALM TREE CONSTRUCTION hereinafter called the Sub-contractor and C.E. ROOKHUIZEN CONSTRUCTION hereinafter called the Contractor.

"For the consideration hereinafter named, the Sub-contractor covenants and agrees with the said Contractor as follows:

"FIRST. The Sub-contractor will furnish all materials and labor, including all necessary scaffolding, and fully construct and in a good substantial, thorough and workmanlike manner perform and in every respect complete . . . (sanitary sewer, manholes and services). (Emphasis added.)

" . . .

"5.1 Work to be Done: The work to be done under this Contract includes the furnishing of all materials, equipment,

-6-

tools, labor and supervision necessary for the construction of the project complete, pipe, supports, tees, services and <u>ready for immediate and continued use</u>. (Emphasis added.)

"6.1 <u>Work to be Done</u>: The work under this Contract includes the furnishing of all materials, equipment, tools, labor and supervision necessary for the construction of the project complete, including watermain pipe valves, valve boxes, fittings, pipe supports and services <u>ready for immediate and continued use</u>." (Emphasis added.)

However, a more complete reading of the parties' agreement indicates Palm Tree was not required to make the water and sewer hookups. The technical specifications applicable to Palm Tree's work state at section 0255 part 5.5 that the "[s]ervice lines shall be plugged or capped watertight at terminal end to allow for testing." ~~Palm Tree could not have made any conncections if it was required to plug or cap the lines at the terminal ends. In addition,~~ The Standard Water Service Detail shows the termination of the water lines at a point five feet from the foundation. The dimension line "5 feet typical" appears on plan RA2A showing the termination of the sewer lines five feet from the foundation. Under the Note/Legend appearing on plan RA2A, the utility contractor is instructed that, "[w]ater and sewer lines shall terminate no more than five feet from the outside of building foundation." On Plan RM-1, which covers the plumbing contractor's duties for the project, lines continue to a point five feet outside the building foundation where they connect with the utility contractor's line. When read together, these contractual provisions indicate Palm Tree was not required to make the water and sewer service lines connections. The whole of a contract is

-7-

to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other. Section 28-3-202, MCA; Kansas City Fire and Marine Ins. Co. v. Clark (D.C. Mont. 1963), 217 F.Supp 231.

We also note that Larry Marshall, an associate at E. F. Link and Associates, who were the architects for the project, expressed to the parties his opinion that the plumbing contractor was responsible for the hookups. Marshall told the parties the ordinary practice in the industry is for the utility contractor to bring a service from the main trunk line up to within five feet of the building. At that point, Marshall stated, a licensed plumber must connect the plumbing from the structure to the service line. Although Marshall's opinion was not necessarily controlling on the parties, his opinion together with facts previously discussed demonstrate Palm Tree was not responsible for the disputed hookups.

Palm Tree also argues the District Court erred in ruling that Palm Tree's lien against property owned by the Housing Authority was improper and should be removed. Appellant asserts that Montana's mechanic's lien laws are to be liberally construed to protect the rights of lien claimants and the legislature has allowed housing authorities to sue and be sued under section 7-15-4455, MCA, which provides; "All housing projects of an authority shall be subject to the plannings, zoning, sanitary, and building laws ordinances and regulations applicable to the locality in which the housing project is situated." However, section 7-15-4532(2), MCA clearly states:

> "All property of the authority shall be exempt from levy and sale by virtue of an

execution, and no execution or other judicial process shall issue against the same. No judgment against the authority shall be a charge or lien upon its real or personal property."

In addition, section 27-18-102 provides that property exempt from execution is exempt from attachment and the Housing Authority is exempt from execution. Thus, the pertinent statutes indicate the District Court did not err in holding Palm Tree's lien was improper.

The judgment is reversed and the case remanded in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

-9-