HON. RUSSELL K. FILLNER, District Judge,
sitting for MR. JUSTICE HARRISON, dissenting:
I dissent. “The world will little note nor long remember” [1] what I write here. Nevertheless, I will set forth briefly my reasons for not being able to concur with the majority opinion, as follows:
The majority holds that the trial Judge committed plain error (clearly erroneous) because he failed to find that Whitefish Lake receded! The majority “is asking for clairvoyance not even possessed by a trial judge.” (Justice John Harrison’s opinion in Naegeli v. Daniels, 145 Mont. 323, 400 P.2d 896, at 898.) Was there any evidence produced at the trial showing that Whitefish Lake receded? No. Neither was the issue raised in the trial court, nor even in this court. The majority opinion holds that the trial judge’s finding that the Stidham line is the correct boundary line between Lots 4 and 5 is supported by substantial and credible evidence; and therefore, the findings will not be disturbed. The majority then states that “it must also be concluded that what would be the northeast corner of Lot 4 if boundary lines are produced, is on land or barely in the lake, and thus the lake has receded.” The majority then attempts to support this conclusion by indulging in assumptions that the .05 of an acre in the original government survey:
“would have equal sides of 66 feet, the length of the meander line of Lot 4 would be 93 feet more or less, and the length could vary slightly depending on separate lengths of the other two sides of the triangle. The original government field notes should have the correct length of the meander line.” (Emphasis supplied.)
The point is that this is not part of the record, although it should have been. While at first blush, the majority’s conclusion that Whitefish Lake has receded may appear to be logical, if we assume that the Stidham survey is absolutely correct, but that is not the only logical conclusion. It is just as logical to assume that the shore of the lake in this area was pushed upward. How or by what means I am no more able to say than the majority can state by what means the lake has receded. Furthermore, even if the lake has receded, it is obvious that Morrison-Maierle must have been aware of the need for another survey to supplement the Stidham survey prior to trial. If the trial judge is in plain error for not recognizing the need for such additional survey, what excuse does Morrison-Maierle have? It *180 certainly possesses the requisite engineering and surveying knowledge, resources and ability to have determined the proper boundary line under the equitable principles governing relicted exposed shorelines. Having failed to do so, it is hardly entitled to another bite at the apple. Morrison-Maierle elected to rely on the defense that Stidham didn’t own the property and that the GN survey was the correct one.
The problem here is that neither party located the corners or lines, and particularly this boundary line, by reference to government surveys or monuments.[2] At oral argument, the Defendant, MorrisonMaierle, stated that it now knew where the true line was and would like to have an opportunity to prove it. If it has, in fact, gone back to some government monument and proceeded with its survey from that point, it may very well be that the line is otherwise than established by the Stidham survey. However, it had that opportunity at the trial level. The point being that none of the parties are contending that Whitefish Lake has receded or that the principles of reliction should apply in this case. Perhaps I can best bring into focus what I’m trying to say by this scenario:
Under the majority opinion as I read it, this case will be remanded to the District Court for the parties (which one is unclear) to make a survey based on the principles of reliction so that Lot 4 will have its same share of the shoreline as before the lake receded. So assume that is dutifully accomplished. This may or may not result in changing the boundary as regards the pumphouse. Now then, be it remembered that this boundary line is the boundary between lands owned by the Burlington Northern Railroad and the Plaintiffs (Stidham). The Burlington Northern Railroad is not a party to this suit.[3] So then, the Burlington Northern Railroad, being unsatisfied with the Stidham survey, brings suit to establish the boundary line between Lots 4 and 5. It conducts a survey based on government monuments and, lo and behold, such survey establishes the line east of the Stidham line and, presto, Whitefish Lake has not receded after all. So what happens then? But even if the Burlington Northern should not bring suit, what will be the effect of this case on other boundary lines — past, present and future — on the shores of Whitefish Lake, if the level of Whitefish Lake has not receded as the court states it must have done? Finally, it is fortunate that Montana is not a coastal state when one contemplates the world-wide ramifications of such a decision on the shorelines of the Atlantic or Pacific Oceans.
*181 I hope that it is obvious from what I have herein said that we simply do not know whether the Stidham line is absolutely the correct line. All that we can say is as the majority has stated, that the Court’s determination is clearly not erroneous and is supported by substantial credible evidence. Justice Morrison, speaking for an unanimous court, in Rose v. Rose, 201 Mont. 86, 651 P.2d 1018, said:
“The proper function of the trial court is to assess the evidence, ascertain the witnesses’ credibility and render its findings based upon substantial credible evidence. If that is accomplished, this Court cannot overturn its decision. Crabtree v. Crabtree, (1982), 200 Mont. 178, 651 P.2d 29, 30 St.Rep. 1668.”
The trial Court’s determination, being supported by substantial credible evidence, should be affirmed.
I agree with the majority’s conclusion that the District Court did not err in striking Morrison’s and the City’s defenses of laches and estoppel. As to Issue No. 5, I would affirm the granting of the City’s motion for summary judgment. The motion was filed, briefed, argued and submitted as the majority found. While it is true that the trial court did not rule on it before the first trial, it did make its ruling thereafter. The majority just makes the conclusionary statement that “there is a contested question of fact of who between the City and Morrison had the responsibility for and who did actually locate the site .for the pumphouse.” The only “contested” facts presented by the Defendant, Morrison-Maierle, in that regard are that an Alderman of the City of Whitefish took one of MorrisonMaierle’s employees to the site, suggesting that it might be an appropriate place for the pumphouse and that its contract with the City does not require it to do any survey work without additional compensation therefor. Those facts really aren’t contested, but it is undisputed that the City leased Lot 4 from Burlington Northern for the purpose of locating the pumphouse thereon. Morrison-Maierle contracted to put the pumphouse on Lot 4. It relied upon an old survey done by the Great Northern Railway, predecessor in interest to the Burlington Northern Railroad. It’s reliance on that line was obviously misplaced. That did not change its responsibility to have placed the pumphouse as agreed in its contract with the City on Lot 4. This it failed to do. Accordingly, I would affirm the District Court’s verdict and judgment in this case.
In conclusion, I am convinced that the majority’s opinion is motivated by a search for truth, but what is truth? I rather believe that a lawsuit is a search for justice under the law. In that regard, see the *182 remarks made by David Elderkin, a Cedar Rapids attorney for 50 years, published in the Montana Lawyer, October 1987, page 16, where he states that the claim that a lawsuit is a search for truth is nonsense. “While we must proceed by truthful means, a lawsuit is a search for justice and a timely, inexpensive system of dispute resolution is a real part of justice.”
Here this case is being remanded to the parties to engage in further time-consuming and expensive surveying that none of the parties believe is necessary or warranted, which, instead of discovering the truth, will only serve to obfuscate it.

. Abraham Lincoln, Gettysburg Address

. In light of a majority opinion in this case, the Legislature might want to take a look at enacting legislation that would require any surveying that involves shorelines on lakes and bodies of water in Montana be made with reference to government monuments, or that such survey, if based on a prior survey, that such prior survey be shown to have been based on government monuments. Any plat or survey not meeting such requirements could not be filed of record, nor used in evidence.

. Although it should be. See Rule 19(a) and 21, M.R.Civ.P.