No. 87-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

GORDON JULIAN,

        Plaintiff and Appellant,

-vs-

MONTANA STATE UNIVERSITY, DENNIS G.
BROWN and EDWIN H. ABBOTT, individually,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        McKinley Anderson, Bozeman, Montana

    For Respondent:

        Roger N. Flair, Legal Counsel, MSU, Bozeman, Montana

---

Submitted on Briefs:  Sept. 10, 1987

Decided:  December 11, 1987

Filed: DEC 11 1987

*Ethel M. Harrison*
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.


This is an appeal from the District Court, Eighteenth Judicial District, Gallatin County. Appellant was awarded the sum of $6,978 as installments due him under an early retirement contract with the defendants. Both parties were denied attorney fees and costs.

Affirmed.

The issues on appeal are as follows:

1. Did the District Court err in concluding that the Montana Wage Protection Act, § 39-3-201 et seq., MCA, did not apply to the summer appointments given the plaintiff?

2. Did the District Court err in finding that no breach of the August 9, 1984 contract occurred?

3. Did the District Court, by requiring that both parties perform according to the contract, err by requiring specific performance of a contract for personal service?

4. Did the court err in finding that the defendants acted in good faith and with fair dealing?

The following facts are undisputed.

At all times relevant to this action plaintiff Gordon Julian was employed as a professor of chemistry in the chemistry department of defendant Montana State University. Plaintiff Julian and defendants entered into an agreement dated August 9, 1984 concerning plaintiff's early retirement. The agreement provided Julian with summer appointments for the three years preceding his retirement on June 30, 1987; appointed him chairman of the search committee employed in filling his vacancy; and assured him that subject to funding and need, the Chemistry Department would try to hire him on a "one-third time, temporary" basis after his retirement. On

August 21, 1984 defendant Abbott, head of plaintiff's chemistry department, sent plaintiff a memo assuring him that every effort would be made to see that plaintiff was given post retirement employment as specified in the August 9 agreement.

Plaintiff was given summer appointments for 1984 and 1985 and was paid. He received a similar appointment in 1986. In July, 1986, defendant Dean Brown requested that Julian write a draft resignation letter as required by University policy. The letter Julian tendered was substantially different than the agreement of August 9, 1984. In a memo dated August 4, 1986 defendant Brown requested that plaintiff resubmit a letter that would better reflect the terms of the August 9, 1984 agreement. Plaintiff responded by requesting clarification of University policy. In reply to this request Dr. Abbott sent the following to appellant:

> The purpose of this memo is to clarify the spirit in which our agreement of August 9, 1984 was reached. While I am not able to promise you post-retirement employment, the department has been hiring temporary instructors every year for quite a long time. I expect that such money will continue to be available and I will make every effort to see to it that you have at least three years of part-time post-retirement employment.

Receiving the draft letter, defendant Brown, being concerned that if he paid plaintiff for July, 1986, he would be accepting the new terms, stopped payment on plaintiff's July pay.

Plaintiff did not discover his check was being withheld until August 11, 1986, the normal payday. Plaintiff immediately telephoned Dean Brown who informed him that he was holding plaintiff's pay until the resignation problems could be worked out. When Dean Brown tried unsuccessfully to

set up a meeting with the plaintiff, he continued to withhold plaintiff's pay. Plaintiff made no effort to meet with or otherwise contact Dean Brown or Dr. Abbott but instead filed this lawsuit on September 11, 1986.

The District Court determined that the contract involved was not an employment contract covered under the Montana Wage Protection Act, 39-3-201 et seq., MCA, but was instead a contract in which the summer appointments were consideration for the plaintiff's early retirement. The District Court also found that defendant Brown's actions in withholding plaintiff's pay were reasonable and in good faith and that they did not breach the contract. The District Court held that no cause of action lay against Dean Brown or Dr. Abbott as individuals but only against Montana State University. Julian appeals.

Although not presented formally as an issue in the appellant Julian's brief, it appears that Julian contends the Court erred in not deciding the case under the provisions of the Montana Wage Protection Act (MWPA). We hold that there was no error. The pertinent code section reads as follows:

> (1) Every employer of labor in the state of Montana shall pay to each employee the wages earned by such employee in lawful money of the United States or checks on banks convertible into cash on demand at the full face value thereof, and no person _for_ _whom_ _labor_ _has_ _been_ _performed_ may withhold from any employee any wages earned or unpaid for a longer period than 10 business days after the same are due and payable. . .
>
> (3) Provisions of this section do not apply to any professional, supervisory, or technical employee who by custom receives his wages earned at least once monthly. (Emphasis supplied.)

Section 39-3-204, MCA.

Appellant argues that the monies received by him for his summer appointments were clearly wages paid to him as an

- 4 -

employee of Montana State University. The term wages is defined by § 39-3-201(5), MCA, as "any money due an employee from the employer . . . and shall include . . . gratuities of any kind." Appellant argues that if this compensation was not wages in the traditional sense, it was certainly a gratuity thus falling within the definition in the statute.

This argument is not compelling. The record shows that the summer appointments were intended by both parties to be consideration in support of appellant's promise to retire early. It was certainly not a gratuity. The District Court found that the appellant was not under any obligation to perform services in addition to those he would normally have performed as a tenured professor at the University. When a district court finding is supported by substantial credible evidence, this Court will not overturn it. Searight v. Cimino (Mont. 1986), 718 P.2d 652, 653, 43 St.Rep. 810, 812; Rose v. Rose (1982), 201 Mont. 86, 91, 651 P.2d 1018, 1020.

Dr. Abbott testified that the University did not expect any services from Julian outside those normally required of a tenured professor, nor was Julian given any. All that was expected was Julian's retirement. Appellant testified that he felt an obligation to be on campus but his contract did not require it. We agree with the District Court's finding that appellant was under no obligation to perform services for respondent.

The District Court was correct in not applying the MWPA. The statute specifically states that "no person _for_ _whom_ _labor_ has been performed" may withhold wages from an employee. Section 39-3-204(1), MCA. No labor was performed by the appellant here. Appellant's summer appointments were not ordinary contracts for services within the meaning of the MWPA. The appointments were consideration supporting the retirement contract. The summer appointments cannot be

- 5 -

focused upon to the exclusion of the rest of the contract. The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Bender v. Rookhuizen (Mont. 1984), 41 St.Rep. 1418, 1422, 685 P.2d 343, 346. Under the specific facts of this case, the District Court was reasonable in construing the contract as it did.

Appellant argues vigorously that if we affirm the District Court on this point we effectively overturn our decision in Hammill v. Young (1975), 168 Mont. 81, 540 P.2d 971. In Hammill, this Court held that § 41-1301(2), R.C.M. 1947, now § 39-3-201(3), does not exclude professionals from protection of the Act but only excludes them from the section that requires bi-monthly payments of wages. Since disposition of this issue does not hinge upon the interpretation of a wage contract under the MWPA but rather upon a contract for early retirement, we are not disturbing the Hammill decision.

Appellant additionally contends that if he was not employed during his summer appointments as defined in the MWPA then he could not use those appointments to increase his retirement pay under the Teachers Retirement Act, § 19-4-101, et seq., MCA. Thus the purpose of the contract would be defeated. Because we are not interpreting the Teachers Retirement Act we need not decide whether appellant was employed for purposes of his retirement plan.

Appellant next challenges the sufficiency of the evidence upon which the District Court found that there was no breach of the contract by the respondents. We affirm the District Court on this issue.

The District Court in its conclusion of law stated that Dean Brown was acting reasonably when he temporarily withheld Julian's July and August, 1986, installments until he received a resignation letter more similar to the 1984

- 6 -

agreement. The court also found that this action did not constitute a breach of the 1984 contract.

Appellant argues that respondents breached the contract when they did not pay appellant for his 1986 summer appointment. Because their actions touched the fundamental purpose of the contract, appellant argues, they committed a material breach. See Rogus v. Relyea (1979), 184 Mont. 1, 8, 601 P.2d 37, 41.

Although the nonperformance of a material contractual obligation is generally a breach, there are instances where such nonperformance is justified or excused. Section 251 of the Restatement (Second) of Contracts (1979) states the following:

> (1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.

This rule was developed to give a party recourse in instances where the other party's actions give rise to a reasonable belief that he will not perform but do not rise to the level of anticipatory repudiation. See Restatement (Second) of Contracts § 251 comment a (1979). In Montana, the standard for anticipatory breach is high. "A repudiation or renunciation must be entire, absolute and unequivocal to support an action for anticipatory breach." S.T.C., Inc. v. City of Billings (1975), 168 Mont. 364, 373, 543 P.2d 374, 379. The District Court found that appellant's actions did not rise to the level of an anticipatory breach and we agree. But we also agree with the District Court that appellant's

actions caused a reasonable belief in respondents that he may not have performed on the contract.

Several jurisdictions have adopted Restatement (Second) of Contracts § 251 comment a (1979). See, e.g., L. E. Spitzer Co., Inc. v. Barron (Alaska 1978), 581 P.2d 213; Carfield & Sons, Inc. v. Cowling (Colo. Ct. App. 1980), 616 P.2d 1008; Jonnet Develop. Corp. v. Dietrich Industries (Pa. Super. Ct. 1983), 463 A.2d 1026; Juarez v. Hamner (Tex. Ct. App. 1984), 674 S.W.2d 856. We find L. E. Spitzer Co. to be directly on point. In that case Spitzer and Barron had entered into a joint venture on a construction project. Spitzer presented Barron with a handwritten document ostensibly containing terms of an earlier oral agreement. Both agreed the document should be reduced to proper legal form and signed. Barron was later presented with the written agreement but which contained terms materially different from the oral contract. Barron shut down the construction and later talked to Spitzer who denied any difference between the oral and written contract. The Alaska Supreme Court held that Spitzer's material alteration of the contract indicated an unwillingness to perform that gave Barron reasonable grounds to suspend performance until he received adequate assurances from Spitzer. L. E. Spitzer Co, 581 P.2d at 217.

In the instant case appellant Julian returned a resignation letter containing terms substantially different from those in the 1984 agreement. Respondent Dean Brown then sent a memo requesting a letter that better reflected the August, 1984, language. He also put a hold on appellant's third contract installment. Appellant was informed on August 11, 1986 that his pay was being withheld because of the resignation letter. Although Dean Brown made efforts to discuss the problems, appellant made no effort to contact respondents, nor did he submit a new resignation letter but

instead filed this lawsuit. Even though the District Court found no anticipatory breach on the part of appellant, respondents were justified in withholding his pay until they could be assured he would comport with the 1984 agreement. We hold that there was sufficient evidence to find that respondents did not breach the contract.

Appellant's third issue on appeal is not meritorious. Appellant argues that because his contract was one for personal services the District Court could not enforce it through specific performance. Section 27-1-412(1), MCA, states:

> The following obligations cannot be specifically enforced: (1) an obligation to render personal service or to employ another therein;

Appellant specifically attacks items 2 and 3 of the 1984 agreement. Item 3 of the contract would require the respondent to offer post-retirement employment to the appellant if feasible. This provision does not obligate Julian to accept any such position if he does not wish. No personal service is actually required of the appellant.

Item 2 appears to require some service as chairman of the search committee for his replacement, but is more difficult to interpret. The clause states:

> 2. During the third and final year of this agreement you will serve as chairman of the search committee for the biochemistry vacancy created by your retirement.

Appellant essentially argues that the word "will" equals "must," therefore requiring appellant's personal service as chairman. It is clear on the record, however, that this provision was never meant to obligate the appellant in any way. Instead it only allows the appellant an opportunity or gives him a right to serve as chairman. It does not require

- 9 -

it. We therefore affirm the District Court on this issue as well.

Appellant lastly contends that there was sufficient evidence to find the respondents had breached the implied covenant of good faith and fair dealing by withholding appellant's summer installment in order to coerce him into submitting a resignation letter. We do not agree. There is nothing on the record to indicate that the respondents were acting maliciously in their steps to obtain a resignation letter they thought was required by University policy.

Respondents did not breach their contract. The record shows that they dealt with each problem in a fair and reasonable manner and at all times tried to adhere to the 1984 agreement. For those reasons we affirm the holding of the District Court on this issue.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices