FILED

05/25/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0373

DA 20-0373

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 132N

PAUL S. PARISER,

      Petitioner, Appellee, and Cross Appellant,

and

JUDITH SHRIAR,

      Respondent and Appellant.

JUDITH SHRIAR,

      Counter Plaintiff and Appellant,

    v.

PAUL S. PARISER,

      Counter Defendant, Appellee, and Cross Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and For the County of Cascade, Cause No. DDV-17-798(b)
                  Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            David L. Charles, Belin McCormick, P.C., Billings, Montana

        For Appellee:

            James F. Gardner, Big Sky Justice, P.C., Great Falls, Montana

                        Submitted on Briefs:  March 31, 2021

                                  Decided:  May 25, 2021

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Judith Shriar appeals two orders of the Eighth Judicial District Court granting summary judgment in favor of Paul Pariser dismissing all of her counterclaims except one, which she withdrew. Pariser cross-appeals the court's award of attorney fees to Shriar. We affirm.

¶3 Shriar is a provincial judge in Alberta, Canada, a position she has held since 2006. In 2012, she met and became romantically involved with Pariser, a wealthy businessman residing in Bozeman. The two had an on-again-off-again relationship for several years. During an "off" period, Pariser married and divorced another person over the course of two years. Following this divorce, the couple began seeing each other again. Pariser began requesting that Shriar take an early partial retirement from her judicial position in order that the two might spend more time together and travel. Shriar initially was reluctant, as the reduced salary and pension implications of working only part-time would cause her some financial difficulty. Pariser represented that he would help offset any monetary loss Shriar experienced and "make her whole"; Pariser showed Shriar financial statements indicating he had the wherewithal to follow through with that promise.

3

¶4 The parties eventually decided to marry. Pariser had his attorney draft a premarital agreement ("PMA") for the two to sign. The PMA stated generally that the couple disclaimed any interest or claim to the other's property or estate and that they would each individually pay their own expenses. The PMA also contained this provision:

> In consideration of [Shriar's] semi-retirement from employment as a Judge of the Provincial Court of Alberta, to be effective December 31, 2016, which semi-retirement is taken as a result of the marriage of the parties rather than [Shriar's] intended retirement after an additional five (5) years of service, the consequence of which is a pension equal to approximately one-half the amount she otherwise would be entitled to receive had she worked an additional five (5) years, or approximately $63,000.00 (Canadian)[1] per year based on her previously anticipated retirement date between April 19 and December 31, 2021.
>
> [Pariser] therefore agrees to provide for up to $1,000,000.00 (Canadian) from his Property, to be incrementally paid to [Shriar] on [Shriar's] ceasing work half-time on January 1 of each year at the rate of $63,000.00 (Canadian).
>
> [Pariser's] obligation for such payment survives the death of [Pariser], provided, however, such obligation by [Pariser] to [Shriar] for such payments will terminate on either:
>
> (a) [Shriar's] death,
>
> (b) [Shriar's] filing for divorce or annulment, or
>
> (c) [Shriar remarrying].

Both parties signed the PMA, and they were married on December 28, 2016.

¶5 Soon after their marriage, the parties' relationship began to sour. Shriar and Pariser each frame the breakdown of their relationship from their own perspectives, but the basic

---

[1] Unless otherwise noted, all dollar amounts referenced are in Canadian Dollars, except in reference to the District Court's attorney fee award.

4

facts are not disputed. Despite not living together, Pariser would visit Shriar and criticize aspects of her housekeeping and religious observations. He additionally seemed to be annoyed with Shriar's continued judicial and community obligations in Alberta. Despite Shriar taking an early retirement in order to travel with Pariser, it does not appear the couple ever actually travelled or vacationed together. The two entered couple's counseling but did not resolve their differences. During a counseling session, Pariser stated, "[i]f she thinks she's getting one red cent out of the prenup, [Shriar] has another thing coming."

¶6      In September 2017 Shriar, now semi-retired, attempted to file for her pension benefits from the Alberta Pension System ("APS"). To that end, she presented Pariser an APS document ("APS Waiver") to sign that waived his right to any payments or interest under the pension system to which he was entitled as Shriar's husband. By this time, the couple's relationship had significantly deteriorated. Pariser asked his attorney's opinion on the APS Waiver; his attorney advised Pariser not to sign it, believing it to be a negotiation tactic. Pariser, however, eventually agreed to sign the APS Waiver if Shriar signed an amendment to the PMA allowing him to file for divorce without having to continue making the yearly $63,000 payments. Shriar was under an APS deadline to elect a pension payout plan. Because under Canadian law Pariser was her "pension partner," she was required to elect a plan that provided a payment to Pariser should she pre-decease him and to Pariser's estate should he pre-decease her. Finally, on November 21, 2017, Pariser wrote a letter to Shriar telling her his attorney had read the waiver and agreed that it was simply a waiver to pension benefits, not a negotiation piece, and that Pariser would sign it without any conditions. The letter also asked Shriar to consider signing the

5

amendment to the PMA in return for two $50,000 (United States Dollars) payments. Shriar refused this request.

¶7 Pariser eventually sued Shriar in December 2017. Rather than seeking dissolution of the marriage, he filed a Complaint for Declaratory Relief and Petition for Declaration of Invalidity ("Complaint and Petition"). Pariser alleged broadly that Shriar fraudulently induced him to marry and live together, that he entered into the PMA only on the basis of some unidentified "mistake," and that the PMA is unconscionable; as relief he requested that the marriage be invalidated. Shriar filed an Answer to Complaint and Counterclaim ("Counterclaim"), alleging breach of oral contract, fraudulent misrepresentation, anticipatory breach of contract, breach of contract, breach of implied covenant of good faith and fair dealing, and abuse of process.

¶8 On the parties' multiple competing motions for summary judgment, the District Court affirmed the validity of the PMA and declined to invalidate the marriage; Pariser does not challenge these rulings on appeal. Regarding Shriar's counterclaims, the District Court found that Counts I, II, V, and VI[2] were "grounded in, and inextricably intertwined with, claims whose core is a breach of promise to marry," a cause of action abolished by Montana law. On Counts III and IV of her Counterclaim, dealing with anticipatory breach of contract, the District Court found that Shriar could not establish an "entire, unequivocal, absolute statement of repudiation" from Pariser. Finally, on Count

---

[2] These counterclaims were: Count I, breach of oral contract; Count II, fraudulent misrepresentation; Count V, breach of contract; and Count VI, breach of implied covenant of good faith and fair dealing.

6

VIII, Shriar's abuse of process claim, the District Court found that Shriar had not established Pariser used the litigation to coerce or attempt to coerce Shriar into performing some collateral act which she could not be legally and regularly compelled to do. The District Court therefore granted Pariser's motions for summary judgment on Counts I, II, III, IV, V, VI, and VIII of Shriar's Counterclaim.[3] Shriar appeals these rulings.

¶9 The District Court's decision to uphold the PMA entitled Shriar to attorney fees and costs under the agreement. After a hearing, the District Court issued an Order on Attorney's Fees, concluding that it was appropriate to award Shriar fees for half of her attorney's claimed hours. The court entered judgment in Shriar's favor for $97,660. Pariser's cross-appeal challenges this award, arguing that the District Court did not support its decision with substantial evidence.

¶10 We review a District Court's order on summary judgment motions de novo. *Stipe v. First Interstate Bank - Polson*, 2008 MT 239, ¶ 10, 344 Mont. 435, 188 P.3d 1063. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits[,] demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law." *Stipe*, ¶ 10 (quoting M. R. Civ. P. 56(c), internal quotation marks omitted). "A de novo review affords no deference to the district court's decision"; we independently review the record under the criteria of Rule 56(c) "to determine whether summary judgment is appropriate."

---

[3] Shriar voluntarily withdrew Count VII of her Counterclaim.

7

*Nunez v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 2020 MT 3, ¶ 9, 398 Mont. 261, 455 P.3d 829 (citation omitted). "We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the offered proof in favor of the non-moving party." *Nunez*, ¶ 9 (citing *Stipe*, ¶ 10).

¶11 When legal authority is not in dispute, we review a district court's award of attorney fees for an abuse of discretion. *Mont. State Univ.-N. v. Bachmeier*, 2021 MT 26, ¶ 26, 403 Mont. 136, 480 P.3d 233 (citation omitted). "A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice." *Bachmeier*, ¶ 26 (internal quotation and citation omitted).

¶12 The District Court determined that Counts I, II, IV, V, and VI of Shriar's Counterclaim were "grounded in, and inextricably intertwined with, claims whose core is breach of promise to marry," a cause of action abolished in Montana by §§ 27-1-602 through -606, MCA. Citing *Albinger v. Harris*, 2002 MT 118, ¶ 27, 310 Mont. 27, 48 P.3d 711, it stated that while claims of "deceit and fraud" relating to a promise to marry are permitted, those claims only arise when one party induced the other to marry without disclosing a "legal impediment" to marriage. The District Court characterized Shriar's claims as an attempt to circumvent these statutes by labeling them something different. It held that despite asserting claims of deceit or fraud in entering the PMA, Shriar presented no facts, disputed or otherwise, supporting her claim. The court therefore dismissed those claims.

8

¶13 Shriar contends that § 27-1-602, MCA, bars causes of action only on contracts to marry, not on oral contracts between unmarried people. Shriar argues that, for her claim under Count I, breach of oral contract, there was no evidence before the District Court that the alleged oral contract was based on a promise to marry. She argues it was instead based on Pariser's representations to her that he would "make her whole" regarding her pension and other finances should she decide to semi-retire early, a promise on which she relied. Regarding Count II, fraudulent misrepresentation, Shriar again argues that § 27-1-602, MCA, does not bar her claim. She contends that she sought damages based on Pariser's false promise that he would compensate her should she take an early semi-retirement from her judicial duties.

¶14 The PMA states that, "[i]n consideration of [Shriar's] semi-retirement from employment" as a provincial judge, "which semi-retirement is taken as a result of the marriage of the parties rather than [Shriar's] intended retirement after an additional five (5) years of service," Pariser will provide her up to $1,000,000 in payments of $63,000 per year. Shriar argues, essentially, that two distinct enforceable contracts exist relating to her early semi-retirement: one in the form of the PMA, a contract that became valid upon the parties' marriage, and another in the form of an oral contract obligating Pariser to "make her whole" should she take an early semi-retirement. Shriar does not define or explain what "make whole" means in relation to the alleged oral contract except that the PMA's $1,000,000 allocation (to which Shriar agreed) is supposedly less than what Pariser promised in the oral contract. Absent a factual dispute, the existence of an oral contract is a question of law, not of fact. *See In re Estate of Bolinger*, 1998 MT 303, ¶ 44,

292 Mont. 97, 971 P.2d 767. Shriar does not present this Court with a developed argument explaining how, even if Pariser did indeed promise to "make her whole" in consideration for her early semi-retirement, that promise amounts to a valid oral contract under Montana law. *See Bolinger,* ¶¶ 44-47.

¶15 The inescapable inference that Shriar is asking this Court to draw is that, because Pariser never explicitly tied his statements about making Shriar whole to a promise to marry, both parties intended those statements to constitute a distinct and binding agreement apart from the PMA. It is undisputed, however, that during this time the parties were in the middle of a romantic relationship and were contemplating marriage; that the PMA—which the parties signed voluntarily and do not challenge on appeal—states that Pariser will provide up to $1,000,000 to Shriar in consideration for her early semi-retirement upon marriage; and that Shriar took her semi-retirement only after the couple married. Based on the foregoing, even viewing the evidence in the light most favorable to Shriar, we cannot reasonably infer the existence of a separate oral contract. And without that inference, any representations Pariser may have made were subsumed into the legally binding PMA. Therefore, even if the District Court misinterpreted Counts I and II of the Counterclaim as implicating an express promise to marry, it nonetheless reached the correct result in dismissing them, and we will not reverse its decision. *See Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 25, 365 Mont. 375, 286 P.3d 241 (noting that we may uphold a judgment on any basis supported by the record, even if the district court applied a different rationale).

¶16 Shriar next contends that Counts V and VI, breach of contract and breach of implied covenant of good faith and fair dealing, raise distinct claims that Pariser breached the PMA,

a written contract specifically permitted under Montana law. Shriar argues that Pariser breached the PMA when he refused to sign the APS Waiver unless she agreed to amend the PMA, allowing him to evade its terms by filing for divorce. She asserts further that because a PMA is construed under the same rules as any other contract, it is subject to the same implied covenant of good faith and fair dealing as any other contract—a claim she asserted in Count VI of her Counterclaim.

¶17 The PMA is silent on whether Pariser was required to sign an APS Waiver—or any other document—but it does provide that Pariser disclaims all interest in Shriar's property and estate. Pariser does not dispute that the PMA establishes that he has no interest in or entitlement to Shriar's pension. Though the record indicates the APS at this time will not accept Pariser's attempts to disclaim his interest in Shriar's pension, the agency has indicated that it would abide by the terms of a court order stating Pariser has no legal right to Shriar's pension. It is undisputed that the parties were married when Shriar filed her Counterclaim and currently remain married.[4] There has thus been no dissolution of marriage or any court order distributing or delineating the parties' rights regarding their property in accordance with the PMA. When the District Court orders such a dissolution and enters an order enforcing the PMA—which it already has found enforceable—Pariser will be bound by the terms of the order. At that point, should he refuse to abide by the order, any claim Shriar may have regarding her pension would accrue. Therefore,

---

[4] Pariser filed for a dissolution of marriage on November 6, 2019, shortly after the District Court issued its order dismissing the remainder of the parties' claims. The District Court consolidated that cause number into this matter's underlying cause number; there does not appear to have been any further action pending this appeal and the parties remain married.

11

regardless of the District Court's reasoning on the matter, it reached the correct conclusion in granting Pariser's motion for summary judgment on Counts V and VI of Shriar's Counterclaim.

¶18 Shriar next argues that the District Court erred in dismissing Counts III and IV of her Counterclaim, alleging Pariser anticipatorily breached the PMA.[5] The thrust of Counts III and IV is that, during a session with a marriage counselor, Pariser stated he would not pay "one cent" or "one red cent" under the PMA, even if ordered to by a court. Shriar argues further that Pariser's refusal to sign the APS Waiver and his general "course of conduct" make it clear he has no intent to abide by a court order that he pay what is required under the PMA. Shriar alleges the District Court therefore failed to view all inferences stemming from these actions in her favor and should have denied Pariser's summary judgment motion regarding Counts III and IV.

¶19 "In Montana, the standard for anticipatory breach is high." *Julian v. Mont. State Univ.*, 229 Mont. 362, 367, 747 P.2d 196, 200 (1987). To prevail on an anticipatory breach of contract claim, a party must establish an "entire, absolute and unequivocal" repudiation of the contract by the opposing party. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 35, 306 Mont. 321, 34 P.3d 87 (citation omitted). As noted, Pariser sent documents to the APS attempting to disclaim any interest he may have in Shriar's pension, and in the PMA he waived any interest he may have in Shriar's estate. As the District Court found, regardless of the APS's authority under Canadian law to accept those documents, they clearly

---

[5] Both counts rest on the same factual allegations but request alternate forms of relief.

evidence that Pariser has not entirely, absolutely, and unequivocally repudiated the PMA's terms. We agree with the District Court's reasoning that Pariser's statement during marriage counseling is "similar to statements made in the emotional heat of a dissolving marriage, and not, in context, an entire, absolute, and unequivocal repudiation." The District Court did not err in dismissing Counts III and IV of Shriar's Counterclaim.

¶20 Finally, Shriar argues that the District Court erred in granting Pariser summary judgment on Count VIII of her Counterclaim, abuse of process. She alleges that Pariser filed the underlying lawsuit knowing it lacked merit in order to force Shriar to either file for divorce first or to sign the amendment to the PMA. The elements of an abuse of process claim are "(1) an ulterior purpose and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, 154 P.3d 561. This entails "an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do." *Seltzer*, ¶ 57 (citation omitted). "Process may refer to summons, subpoenas, attachments, garnishments, replevin or claim and delivery writs, arrest under a warrant, injunctive orders, and other orders directly affecting obligations of persons or rights in property." *Hughes v. Lynch*, 2007 MT 177, ¶ 23, 338 Mont. 214, 164 P.3d 913 (citation omitted).

¶21 Granting Pariser summary judgment, the District Court stated that Shriar had not met her burden to show that he abused process by seeking a declaration on the PMA's enforceability. We agree. Pariser's underlying action seeking a declaration on the PMA's enforceability is an appropriate request to make of a court. Unlike in either *Seltzer* or *Seipel*

13

*v. Olympic Coast Invs.*, 2008 MT 237, 344 Mont. 415, 188 P.3d 1027 (where plaintiffs provided proof of defendants' specific communications in the underlying matter containing unambiguous statements of their intent to use court proceedings as a method of coercion), here Shriar points only to her own interpretation of events.

¶22 More, Shriar does not offer a clear argument regarding how Pariser abused "process," as defined above, to attempt to coerce her into either filing for divorce, dropping her claim for payment under the agreement, or amending the agreement. Shriar points to her relatively lesser financial resources to defend litigation as evidence that Pariser used the underlying litigation to force her to file for divorce first. The PMA, however, entitles Shriar to attorney fees incurred in defending Pariser's litigation. The remaining facts Shriar raises establish only what the District Court characterized as "maneuvering" by two parties in an unhappy relationship. Pariser's actions evidence at most that he wanted to get out of the PMA and had come to think of it as unfair or not valid; they do not rise to the level of coercion required for a valid abuse of process claim. *Seltzer*, ¶ 57. The District Court appropriately granted Pariser summary judgment on Count VIII of Shriar's Counterclaim.

¶23 Finally, we turn to Pariser's cross-appeal that the District Court abused its discretion in awarding Shriar $97,660 in attorney fees as the prevailing party regarding the PMA's enforceability. Pariser does not dispute that Shriar is entitled to fees, only that the District Court erred in calculating a reasonable award. The District Court applied our long-used guidelines to determine the reasonableness of attorney fees:

    (1) the amount and character of the services rendered;

    (2) the labor, time and trouble involved;

14

(3) the character and importance of the litigation in which the services were rendered;

(4) the amount of money or the value of the property to be affected;

(5) the professional skill and experience called for;

(6) the attorneys' character and standing in their profession; and

(7) the results secured by the services of the attorneys.

*Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984. "The *Plath* factors are not exclusive, and a district court is within its discretion to rely on other considerations in determining reasonableness." *Bachmeier*, ¶ 70 (citation omitted).

¶24 The District Court noted that Shriar's attorney initially claimed 643 hours in total spent on the matter. At the hearing on attorney fees, however, Shriar's attorney reduced his claimed time to 514 hours—the amount of time spent on the matter up until the issue of the PMA's enforceability was resolved in Shriar's favor. In its Order on Attorney's Fees, the District Court noted that the "amount" of services rendered in the matter was "disproportionate to the dispute" and "egged on by the clients of both sides." It found counsel's $380 hourly rate to be reasonable but held that "[t]he time expended on the [PMA] by the parties, and by the Court, was not more than half of the total time expended on this case." It accordingly reduced the number of compensable hours from 514 to a "reasonable" 257 hours. The District Court therefore awarded Shriar $97,660 in attorney fees, multiplying the $380 hourly rate by 257. Pariser argues that the award of "fees for one-half of 514 hours" is "arbitrary" and "not supported by the record" and

15

requests this Court remand for a more accurate determination of time spent exclusively on enforcing the PMA. He does not challenge the hourly rate.

¶25 The District Court held a hearing on attorney fees and received extensive documentation of the time Shriar's attorney spent on the matter. In its order, the District Court considered each of the *Plath* factors. Despite finding the time Shriar's attorney spent on the matter technically supported, the District Court chastised both parties for "scorched earth" tactics that resulted in "needless multiplication of the proceedings." The District Court did not abuse its discretion in considering this factor when it reduced the attorney fee award. *See Bachmeier*, ¶ 70.

¶26 The District Court gave conscientious consideration to Pariser's arguments and did not abuse its discretion by failing to parse the details as Pariser insists. An award of attorney fees need only be "reasonable" as determined by the facts of the case. *Houden v. Todd*, 2014 MT 113, ¶ 37, 375 Mont. 1, 324 P.3d 1157. Pariser's assertion that determining the PMA's validity was "relatively straightforward" and did not warrant such a large award ignores the District Court's analysis that both parties complicated and unnecessarily protracted the proceedings, foreseeably increasing the time their attorneys spent on the matter. Our review of the record and the District Court's reasoning convinces us that the court did not act arbitrarily but employed its discretion and did not exceed the bounds of reason in reaching its decision. *Bachmeier*, ¶ 26. Its order awarding Shriar $97,660 in attorney fees is affirmed.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

16

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The District Court's judgment is affirmed in all respects.

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE