

DA 13-0311

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 113

CHRISTOPHER A. HOUDEN and
JEFFREY HOUDEN,

      Plaintiffs and Appellees,

  v.

WAYNE S. TODD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 08-04
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      John C. Doubek; Doubek, Pyfer & Fox, LLP; Helena, Montana

    For Appellees:

      Robert K. Baldwin; Spencer C. Thomas; Goetz, Baldwin & Geddes, P.C.;
Bozeman, Montana

                 Submitted on Briefs:  February 26, 2014
                        Decided:  April 29, 2014

Filed:

_____

                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Wayne Todd appeals the final judgment of the Twenty-Second Judicial District Court, Carbon County, finding in favor of Christopher and Jeffrey Houden (Houdens) and awarding attorneys' fees.

¶2 We address the following issues on appeal:

¶3 *1. Whether the District Court erred in its entry of judgment in favor of the Houdens.*

¶4 *2. Whether the adoption of the Restated Covenants mooted the Houdens' claim for attorneys' fees and costs.*

¶5 *3. Whether the District Court abused its discretion in awarding the Houdens attorneys' fees and costs in the amount of $371,513.03.*

¶6 We affirm the court's entry of judgment in favor of the Houdens. We affirm the award of attorneys' fees but reverse the amount of the fee award and remand for recalculation.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7 This case arises from a dispute between property owners in Canyon Ranches, a subdivision developed by the Houdens in Carbon County, Montana. Canyon Ranches consists of twenty-six lots. On June 4, 2002, prior to selling any of the lots, the Houdens recorded a "Declaration of Covenants, Conditions, Restrictions and Reciprocal Easements for Canyon Ranches Subdivision" (the Original Covenants). The Houdens incorporated "Canyon Ranches Subdivision Homeowners' Association" (HOA) on June 11, 2002, in part to enforce the Original Covenants on all properties within Canyon Ranches.

2

¶8   The Original Covenants prohibited further subdivision of lots "[e]xcept for . . . division of Lots containing twenty (20) or more acres . . . ."  This provision of the Original Covenants, referred to as the No Standing Provision, added, "[n]either the Association, nor any Owner, shall have standing to oppose the further division of any Lot containing twenty (20) or more acres as of the effective date of this Declaration, provided such division is proposed in accordance with all then-applicable statutes, ordinances, regulations, rules and orders of governmental entities with applicable jurisdiction . . . ." The Houdens sold twenty-four lots, including Lot One to Todd.  Only Lot Twenty-Six— retained by the Houdens—exceeded twenty acres.

¶9   The Original Covenants allowed for amendment of the covenants when at least seventy-five percent of the lot owners voted for an amendment.  In December 2007, twenty-three lot owners voted to record an amendment to the Original Covenants, referred to as the Second Amendment.[1]  The Second Amendment prohibited division of lots in excess of twenty acres absent approval of seventy-five percent of the lot owners. It also reversed the No Standing Provision, granting the HOA or any owner the right to oppose further subdivision of any lot.

¶10   On January 3, 2008, the Houdens filed a complaint against the lot owners (collectively referred to as Defendants) who voted for the Second Amendment.  The complaint alleged that the changes imposed by the Second Amendment were invalid and "in contravention of the settled rights and expectations of the parties."  The Houdens

---

[1] There was a First Amendment to the Original Covenants adopted in 2002; it is not at issue in this appeal.

3

sought injunctive relief to declare the Second Amendment invalid. They also asked for attorneys' fees pursuant to a provision in the Original Covenants. That provision allows a prevailing party to recover costs and reasonable attorneys' fees in any action to "enforce, enjoin any violation of, or to construe the provisions of [the Original Covenants]."

¶11 An extensive litigation process ensued. Defendants removed the action to federal court. Because there was not complete diversity of citizenship, the federal court later remanded the action to the District Court. The Defendants brought counterclaims against the Houdens and both parties filed motions. At Todd's suggestion and by agreement of the parties, the District Court appointed a Special Master to review the pending motions and make recommendations to the court.

¶12 On August 9, 2009, the Special Master recommended that the District Court grant the Houdens' summary judgment motion and invalidate the Second Amendment. Observing that the issue was one of first impression in Montana, the master adopted the view of jurisdictions holding that an amendment—even one validly adopted—may not take away the settled rights and expectations of the parties under a contract. Because the Original Covenants gave the Houdens a reasonable expectation that they could subdivide their twenty-plus acre parcel, the Second Amendment could not be applied to deprive them of a settled right that existed as part of the expectation of their ownership of the property. The District Court adopted the master's findings and recommendations in whole on December 14, 2009.

4

¶13　Unbeknownst to the court, before its adoption of the master's findings and recommendations, the lot owners passed another amendment (Third Amendment) to the Original Covenants. The Third Amendment purported to revoke the Second Amendment by reinstating the right of the Houdens to subdivide Lot Twenty-Six as allowed by the Original Covenants. It retained, however, the elimination of the No Standing Provision, allowing lot owners to oppose the division of Lot Twenty-Six in the subdivision review process.

¶14　Following the court's adoption of the master's findings and recommendations, Defendants filed a motion requesting clarification of the court's order. Defendants argued that nothing in the order precluded the Third Amendment's elimination of the No Standing Provision. At the direction of the District Court, the Special Master addressed Defendants' motion. On April 30, 2010, the Special Master concluded that the elimination of the No Standing Provision was invalid whether it was a part of another amendment or a separately adopted amendment. The court adopted the master's recommendation on this issue in an order dated July 21, 2010.

¶15　In September 2010, the Houdens and all Defendants except Todd reached a settlement. Pursuant to the terms of the Settlement Agreement, each of the settling parties agreed to pay the Houdens $7500 and to sign "Amended and Restated Covenants" (Restated Covenants). The Restated Covenants expressly prohibit amendment to deprive the Houdens of their right to subdivide Lot Twenty-Six. After the filing of the Restated Covenants on September 17, 2010, the Original Covenants, including the Second and

5

Third Amendments, were superseded. The Settlement Agreement reserved the Houdens' right to litigate any claims against lot owners not party to the settlement.

¶16 On February 22, 2011, the District Court entered partial judgment in favor of the Houdens and against Todd, declaring the Second and Third Amendments null, void and unenforceable. The court also ruled against Todd on his counterclaims.

¶17 On August 24, 2012, the District Court ordered that the Houdens were entitled to attorneys' fees under the Original Covenants as the prevailing party in the action. After holding a hearing, the Court awarded the Houdens attorneys' fees and costs in the amount of $371,513.03. In its twenty-eight page order, including fifty findings of fact and fifty-six conclusions of law, the court recounted the extensive collateral issues that Todd raised in the case; it faulted him for complicating the litigation with unsubstantiated counterclaims and an unreasonable removal to federal court. After consideration of these factors, the court concluded that the Houdens' requested attorneys' fees were reasonable. The amount awarded reflected a deduction of amounts already paid in the settlement and the attorneys' fee award by the U.S. District Court. It included fees for work on the fee award and fees that the federal court declined to award for the removal proceeding.

¶18 Todd appeals: the final judgment entered on April 15, 2013; the findings of fact, conclusions of law and order regarding the award of costs and attorneys' fees entered on April 10, 2013; and all orders resulting in the final judgment in favor of the Houdens and against Todd.

**STANDARD OF REVIEW**

¶19 We review a district court's grant of summary judgment de novo. *Chipman v. N.W. Healthcare Corp.*, 2014 MT 15, ¶ 11, 373 Mont. 360, 317 P.3d 182. Whether a party is entitled to recover attorneys' fees is a question of law. *Chase v. Bearpaw Ranch Assn.*, 2006 MT 67, ¶ 14, 331 Mont. 421, 133 P.3d 190. "We review a district court's conclusions of law pertaining to the recovery of attorney fees to determine whether those conclusions are correct." *Chase*, ¶ 14 (internal citation omitted).

¶20 An award of attorneys' fees is reviewed for an abuse of discretion. *Chase*, ¶ 15. "A court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Chase*, ¶ 15.

**DISCUSSION**

¶21 *1. Whether the District Court erred in its entry of judgment in favor of the Houdens.*

¶22 Todd contends that the District Court erred in declaring the Second and Third Amendments null, void and unenforceable. He argues that their adoption was consistent with the broad amendment provisions of the Original Covenants. The Houdens respond that the adoption of the Restated Covenants renders Todd's arguments moot. Although Todd was not a party to the Settlement Agreement, the Restated Covenants run with the land and apply to Todd. Even if Todd's argument regarding the Second and Third Amendment is correct, the Houdens maintain the Amendments can no longer be enforced because the Restated Covenants have superseded them.

7

¶23 Todd does not dispute that the Restated Covenants have resolved the dispute regarding division of the Houdens' parcel of property. He maintains nonetheless that this issue must be addressed because, if the District Court had interpreted the Second and Third Amendments correctly, he would have been the prevailing party in the lawsuit instead of the Houdens. Accordingly, the Houdens would not have received an attorneys' fee award. Todd asserts that analysis of the issue is required in order for this Court to determine the Houdens' right to recover their fees.

¶24 Mootness is a threshold issue. *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331, 142 P.3d 864. An issue is moot "if the issue presented at the outset of the action has ceased to exist or is no longer 'live,' or if the court is unable due to an intervening event or change in circumstances to grant effective relief or restore the parties to their original position . . . ." *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881.

¶25 This Court has not addressed whether it may analyze a moot issue in order to determine if attorneys' fees properly were awarded. We previously have looked to federal courts for guidance on justiciability. *Greater Missoula*, ¶ 22. Article VII, Section 4 of the Montana Constitution confines our authority to justiciable controversies in the same way the case or controversy provision of the United States Constitution limits the federal courts. *Greater Missoula*, ¶ 22.

¶26 The weight of federal authority suggests that review of an award of attorneys' fees does not revive an otherwise moot issue. *Lewis v. Contl. Bank Corp.*, 494 U.S. 472, 480,

8

110 S. Ct. 1249, 1255 (1990) ("This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."); *Ctr. for Biological Diversity v. Marina Pt. Dev. Co.*, 560 F.3d 903, 906 (9th Cir. 2009) ("When a matter becomes moot on appeal, the court will not, and cannot, review the merits of the underlying dispute for the purpose of determining whether an award of attorney fees was proper. That is to say, although it can consider whether the plaintiff prevailed at all, it cannot ask whether the district court's underlying decision on the merits was erroneous.") (citing numerous additional cases); *see Diamond v. Charles*, 476 U.S. 54, 70-71, 106 S. Ct. 1697, 1708 (1986) ("The fee award is wholly unrelated to the subject matter of the litigation . . . . It is true that, were the Court to resolve the case on the merits against appellees, appellees would no longer be 'prevailing parties' entitled to an award of fees . . . . But the mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III.").

¶27 We find the federal authority persuasive. We do not address moot issues and we do not issue advisory opinions. *Serena Vista, LLC v. Mont. State Dept. of Natl. Resources & Conserv.*, 2008 MT 65, ¶ 14, 342 Mont. 73, 179 P.3d 510. Any analysis of the underlying substantive issues in this case would be merely advisory because we cannot grant Todd the relief he sought originally—the prohibition of the subdivision of Lot Twenty-Six. The Restated Covenants, which now apply to Canyon Ranches and which are not challenged, expressly prohibit amendment to prevent subdivision of the lot.

9

Consistent with the "wide agreement" among other appellate courts, we will "not undertake to delve into the details of a district court's resolution of a controversy that has since become moot in order to decide the ancillary question of fees." *Ctr. for Biological Diversity*, 560 F.3d at 907.

¶28   *2. Whether the adoption of the Restated Covenants mooted the Houdens' claim for attorneys' fees and costs.*

¶29   Todd contends that the District Court erred by refusing to dismiss the Houdens' contract claim for legal fees as moot. He states that upon the filing of the Restated Covenants, the language supporting the award of attorneys' fees in the Original Covenants was rescinded. He argues that the technical meaning of the word "rescind" is to declare the Original Covenants "void in [their] inception and to put an end to it as though it never were." The Houdens respond that the parties to the Settlement Agreement did not intend to use the word "rescind" in its technical meaning and instead intended to preserve the Houdens' claims against Todd.

¶30   While it is clear that the Restated Covenants have mooted the controversy regarding the Second and Third Amendments, "[i]t is also plain that mootness alone does not preclude an award of attorneys['] fees." *Center for Biological Diversity*, 560 F.3d at 906. Thus, "a determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'" *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980); *Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir. 1980), cert. denied, 450 U.S. 1012, 101 S. Ct. 1723 (1981) ("Claims for attorneys' fees ancillary to the case

10

survive independently under the court's equitable jurisdiction, and may be heard even though the underlying case has become moot."). It is significant that the fees were incurred in obtaining two summary judgment awards and negotiating a settlement of the remaining substantive issues. The Houdens had obtained a judicial determination in their favor under the Original Covenants before the Restated Covenants superseded them.

¶31   Todd argues that the Houdens' claim to fees depends exclusively on the contract between the parties and that the contract cannot serve as the basis for such an award because it no longer exists. Todd overlooks the relationship between the Restated Covenants and the Settlement Agreement under which they were adopted. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction are to be taken together." Section 28-3-203, MCA. When the relationship between documents related to an agreement is close, they should be viewed as one in order to determine the true intent of the parties. *Rumph v. Dale Edwards, Inc.*, 183 Mont. 359, 367, 600 P.2d 163, 168 (1979).

¶32   The lot owners' action to rescind the Original Covenants was by virtue of the Settlement Agreement, which expressly set apart and preserved the Houdens' claim for fees under the Original Covenants. These two documents relate to the same matter of ending the litigation by preserving the Houdens' right to subdivide Lot Twenty-Six. They also were between the same parties and were made as part of the same transaction. Because of the close relationship between the documents, they should be construed in conjunction with each other to determine the parties' intent.

¶33 The Restated Covenants provide, "Upon the recording of this Declaration, the [Original Covenants] shall become, and hereafter shall be, rescinded, null, void, and of no further force and effect." The Settlement Agreement states that "the parties do not release, but instead expressly preserve, and reserve their right to assert . . . [a]ny and all claims by or against any Non-Party Lot Owner." The rescission was effectuated by the Settlement Agreement to which Todd was not a party and which must be read together with the Restated Covenants.

¶34 It is clear that the parties' intent under the Settlement Agreement and the Restated Covenants was to preserve the Houdens' claims against Todd. The Houdens had prevailed in their substantive legal claims against Todd before the Restated Covenants mooted the controversy between the parties. Accordingly, we affirm the District Court's decision to allow a claim for attorneys' fees under the Original Covenants to proceed.

¶35 *3. Whether the District Court abused its discretion in awarding the Houdens attorneys' fees and costs in the amount of $371,513.03.*

¶36 Because the Restated Covenants did not moot the Houdens' claim for fees, we address Todd's argument regarding the reasonableness of the $371,513.03 award. He contends that the District Court erred by: imposing fees against him despite his position as an HOA board member; including fees incurred by the Houdens in their efforts to recover fees; including fees determined to be excessive by the federal court; including fees for two different law firms; including fees for the drafting and filing of the Restated Covenants; and adopting several of Houdens' proposed findings of fact without evidentiary support. The Houdens, in turn, ask for fees on appeal.

12

¶37 Though reviewed for abuse of discretion, an award of attorneys' fees must be reasonable. *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984. District courts should determine reasonableness under the facts of each case. *Plath*, ¶ 36. Although not exclusive, we have articulated guidelines to be used by district courts when determining reasonableness. *Bitterroot River Protective Assn. v. Bitterroot Conserv. Dist.*, 2011 MT 51, ¶ 45, 359 Mont. 393, 251 P.3d 131. These include "(1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys." *Plath*, ¶ 36. The District Court considered these factors in determining the Houdens' claim.

### a. Board member exemption

¶38 Todd challenges the award of attorneys' fees because of his status as an HOA board member. The Original Covenants contained a waiver of liability for HOA board members for any "loss, damage or injury arising out of or in any way connected with the adoption, implementation or enforcement of [the Original Covenants] . . . or any amendment hereto."

¶39 The Houdens sued Todd in his individual capacity. The lawsuit arose from Todd's actions as an individual lot owner who voted for the Second Amendment, not from any action taken as a board member of the HOA. Todd does not provide any authority for his

13

argument that his position as a board member insulates him from liability for his actions as an individual lot owner. As such, we agree with the District Court that the liability waiver in the Original Covenants does not insulate Todd from liability in this action.

### b. Fees incurred in recovering fees (fees-for-fees)

¶40 Todd next contends that the District Court erred by allowing the Houdens to recover fees-for-fees. The fee provision in the Original Covenants allowed for an award of fees in any action to "construe the provisions of this Declaration." The court considered a dispute over a reasonable amount of fees as an action to interpret a contract provision and concluded that an award of fees-for-fees was reasonable in this case.

¶41 Contractual fee-shifting provisions are a recognized exception to the American Rule that a party generally pays its own attorneys' fees. *Chase*, ¶ 29. Nevertheless, a general contract provision shifting attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves. *Chase*, ¶ 30. The contract provision at issue in *Chase* authorized attorneys' fees "in any action of any kind *for the enforcement* of the Covenants, Conditions, and Restrictions." *Chase*, ¶ 31 (emphasis in original). Because the contract authorized a fee award, the Court determined that establishing a right to such an award was an action to enforce the contract. *Chase*, ¶ 32. We therefore permitted fees-for-fees to the extent that such fees were incurred establishing the prevailing party's entitlement to such fees. *Chase*, ¶ 32. The Court declined, however, to allow fees for the time spent establishing the amount of reasonable attorneys' fees. *Chase*, ¶ 32. The Court expressed concern that allowing such fees under a general contract provision would allow

14

the exception of contractual fee-shifting to swallow the general rule that a party should pay its own fees. *Chase*, ¶ 30.

¶42    The Houdens argue that establishing a reasonable amount of attorneys' fees is an action to "construe" the provisions of the Original Covenants as allowed by the attorneys' fee provision. We disagree. The attorneys' fees provision in the Original Covenants can be characterized as a general contract provision that does not specifically contract for fees incurred in connection with a proceeding to establish the amount of fees that may be recovered. In accordance with *Chase*, we agree that the Houdens are entitled to recover fees incurred in establishing their entitlement to fees under the Original Covenants. This right does not extend, however, to fees incurred in establishing the amount of reasonable attorneys' fees. *Chase*, ¶ 32. We reverse the District Court's determination and remand for the court to recalculate the fee award properly excluding fees incurred in establishing the reasonable amount of the Houdens' claimed fees.

### c. Removal fees

¶43    When the Houdens sought remand to state court, they requested an award of costs and attorneys' fees incurred as a result of the Defendants' improper removal. Such fees are authorized pursuant to 28 U.S.C. § 1447(c). The U.S. District Court denied the Houdens' motion for fees and costs. The Houdens appealed this denial. The Ninth Circuit Court of Appeals reversed the district court's judgment, holding that Todd's removal was "objectively unreasonable." On remand to the federal district court, the Houdens requested fees and costs in the amount of $55,968.12. The court awarded fees

15

in the amount of $20,957.62. The court reduced the requested amount for two reasons. First, it determined that the Houdens did not request fees for the appeal to the Ninth Circuit Court of Appeals in a timely manner under the Ninth Circuit Local Rules. Second, it determined that the hourly rates charged by the Houdens' attorneys were unreasonable and lowered each requested rate by $50 per hour.

¶44     In their request to the District Court for attorneys' fees, the Houdens deducted the $20,957.62 already awarded by the federal court. They included, however, a request for $35,010.50, the difference between the amount they had requested and the amount the federal court awarded. The District Court included the additional amount in the Houdens' fee award. Todd argues that this award of fees is unreasonable because a federal judge already had determined that they were excessive. The Houdens counter that the District Court was not bound by the federal court's fee determination. Further, they contend that the federal court's fee award was limited by statutory restrictions that do not apply to the contractual fee provision they sought to enforce in the District Court.

¶45     The Houdens' attempt to characterize the District Court's additional fee award as allowable because it stemmed from the contractual provision is unpersuasive. Their requested fee award was reduced by the federal court because they failed to follow the court's local rules and failed to convince the judge that their hourly rate was reasonable. The amount of reasonable attorneys' fees attributed to the improper removal already was adjudicated. Concerns of comity and judicial economy invoke the law of the case doctrine here. The law of the case doctrine is the practice of courts "generally to refuse

16

to reopen what has been decided." *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352. A decision "made at one stage of litigation which is not appealed when the opportunity to do so exists, becomes the law of the case for the future course of that litigation . . . ." *McCormick*, ¶ 38. Contrary to the District Court's assertion, the law of the case doctrine applies to coordinate courts, including between state and federal courts on removal and remand. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* vol. 18B, § 4478.4, 770 (2d ed., West 2002). The Houdens litigated their fee claim for improper removal and received the fees to which the federal court determined they were entitled under federal law for a federal proceeding. They cite no cases in which additional fees have been awarded by a state court under these circumstances. Allowing the Houdens a second chance to recover the same fees required the District Court to review what the federal court already decided, which disregards the comity afforded to a coordinate court. We conclude that the District Court abused its discretion by including the $35,010.50 as part of the Houdens' fee award. On remand, the District Court should recalculate the fee award to deduct this requested amount.

### d. Two law firms

¶46 Todd contends that the court abused its discretion by awarding the Houdens fees for two separate law firms when one firm would have been adequate. The District Court found that the use of two law firms was reasonable because of the extensive motion practice the case generated, the number of defendants and Todd's actions that multiplied

17

the litigation. Further, the District Court found that the costs between the two firms did not "unreasonably increase costs or fees or lead to unreasonable duplication," and that they "properly allocated the tasks between them to avoid duplication of effort." The court concluded that "[t]he working relationship between [Houdens' lawyers] is not appreciably different from the efforts of two attorneys in the same firm working on the same case." Todd does not contend that these findings are clearly erroneous, nor does he articulate why the award constitutes an abuse of discretion. Rather, he generally asserts that only one firm was necessary. The court's extensive findings and the record upon which they are based support an award for two attorneys. We are not convinced that the District Court abused its discretion by determining that fees for two law firms was reasonable in this case.

### e. Fees for drafting and filing the Restated Covenants

¶47 Todd disputes the court's imposition of fees for drafting and filing the Restated Covenants. He argues that the $16,000 charged by the Houdens' attorneys for execution of the Settlement Agreement and the Restated Covenants "clearly had nothing to do with the enforcement or interpretation of the Original Covenants, Second or Third Amendments."

¶48 The District Court actually concluded that Todd was not responsible for these fees because the settling parties paid them. The Houdens received $157,000 from the settling parties that they deducted from their request for fees. The District Court concluded that "Wayne Todd is not being asked to pay for the fees and costs that the Houdens incurred

18

in the settlement but has benefitted significantly by Houdens' receipt of those funds." Todd does not dispute these findings and we find no abuse of discretion on this issue.

### f. Findings contradicted by the record

¶49 Todd makes a general argument that the District Court's adoption of the Houdens' proposed findings of fact and conclusions of law ignored contrary evidence and resulted in substantial injustice to Todd.

¶50 Specifically, he argues that the court mischaracterized the "crux" of his argument. In its findings of fact, the court found that Todd's defense revolved around the claim that he and other Defendants were told prior to the purchase that the Houdens would not develop Lot Twenty-Six. It determined that there was no evidence supporting this assertion. Todd argues that his argument was actually based on the language of the Original Covenants.

¶51 Todd fails to demonstrate how this finding resulted in the imposition of unreasonable attorneys' fees. When discussing this argument, the court merely was pointing out one of the many ways Todd's actions complicated the litigation. This was an attempt to counter Todd's arguments that attorneys' fees were unreasonably high for a simple contract case that did not go to trial. The court's findings regarding the protracted litigation in this case were detailed, thorough and followed the factors articulated in *Plath*. The court stated, "Todd did everything possible to portray the case other than a simple matter of contract interpretation and cannot now seek refuge in the very simplicity he sought to obscure." The court listed the ways that Todd's action "greatly multiplied

19

the issue, requiring an enormous amount of additional work by Houdens' counsel" and did not rely only on the one argument that Todd now challenges. We are not persuaded that awarding fees as a result of the court's characterization of Todd's argument amounted to an abuse of discretion.

### g. Fees on appeal

¶52 The Houdens request an additional award of attorneys' fees for the present appeal. We previously have held that "if a contract includes a provision stating that a prevailing party is entitled to reasonable attorney[s'] fees arising from litigation under the contact, appellate attorney[s'] fees are included under the provision." *Boyne USA, Inc. v. Lone Moose Meadows, LLC*, 2010 MT 133, ¶ 26, 356 Mont. 408, 235 P.3d 1269. Although we are reversing a portion of the District Court's fee award, we uphold its decision on the merits and its imposition of fees in this case. As such, the Houdens are the prevailing party and are entitled to fees incurred on appeal. On remand, the District Court should impose reasonable attorneys' fees associated with this appeal.

## CONCLUSION

¶53 Because the underlying merits of this case are now moot, we do not address whether the District Court erred in its decision to void the Second and Third Amendments. Thus, its judgment in favor of the Houdens is affirmed. The Restated Covenants did not moot the Houdens' right to attorneys' fees and costs under the fee-shifting provision of the Original Covenants. As the prevailing party, they are entitled to reasonable fees and costs. We reverse and remand the District Court's fee

award.  On remand, the court should recalculate the fee award to properly exclude fees-for-fees in accordance with this Opinion, to exclude fees incurred on removal, and to include the Houdens' fees and costs on appeal.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON