DA 13-0383

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 181A

GREG LeMOND, an individual,

      Plaintiff and Appellee,

    v.

YELLOWSTONE DEVELOPMENT, LLC,
a Montana limited liability company;
YELLOWSTONE MOUNTAIN CLUB, LLC,
a Montana limited liability company;
TIMOTHY BLIXSETH, an individual;
OVERLOOK PARTNERS, LLC; and
395 LAMPE, LLC,

      Defendants and Appellants.

---

395 LAMPE, LLC,

      Counterclaimant and Appellant,

    v.

GREG LeMOND,

      Counterdefendant, Appellee and Cross-Appellant.

---

APPEAL FROM:    District Court of the Fifth Judicial District,
                      In and For the County of Madison, Cause No. DV-29-2007-5
                      Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Anne Blanche Adams; Cederberg Law Offices, P.C.; Missoula, Montana
        (for 395 Lampe, LLC)

        Mark H. Gunderson; Austin K. Sweet, Catherine A. Reichenberg;

Gunderson Law Firm; Reno, Nevada (for 395 Lampe, LLC)

John C. Doubek, Patrick T. Fox; Doubek, Pyfer & Fox, LLP; Helena, Montana (for Timothy Blixseth and Overlook Partners, LLC)

Rebecca Pape; Pape & Griffith, PLLC; Bozeman, Montana (for Timothy Blixseth and Overlook Partners, LLC)

For Appellee:

Robert K. Baldwin; Trent M. Gardner; Goetz, Baldwin & Geddes, P.C.; Bozeman, Montana

Submitted on Briefs: April 9, 2014
Decided: July 14, 2014
Amended: August 20, 2014

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1    Timothy Blixseth, Overlook Partners, LLC, and 395 Lampe, LLC, appeal an order of the Fifth Judicial District Court granting summary judgment to Greg LeMond. LeMond cross-appeals. Although the parties raise numerous contentions, we restate the dispositive issues as follows:

¶2    *1. Whether the District Court erred when it dismissed Blixseth from this action.*

¶3    *2. Whether Overlook Partners and Lampe obtained their interests in the Overlook Lots subject to the outcome of LeMond's claim against Yellowstone Development.*

¶4    *3. Whether Overlook Partners or Lampe may challenge the stipulations between LeMond and Yellowstone Development's bankruptcy trustee.*

¶5    *4. Whether the District Court properly exercised its equitable powers in the entry of its final judgment.*

¶6    We affirm in part, reverse in part, and remand.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7    This case involves a property dispute at the Yellowstone Mountain Club, a private ski and golf resort in Madison County. LeMond owned property at the Yellowstone Mountain Club and sought to purchase an adjacent property, Lot 11, from its owner, Yellowstone Development. Negotiations between LeMond and Yellowstone Development began in 1999 or 2000. Blixseth represented Yellowstone Development in the negotiations.

¶8    Blixseth sent an e-mail on behalf of Yellowstone Development on September 21, 2000. The e-mail stated, "The deal is that if Greg brought in 10 people who bought at the club, he would receive the lot." The e-mail continued, "We did reach agreement that if

3

after 5 years he had brought in less than the 10, he could pay the difference at the rate of $100,000 per person." LeMond maintains that the e-mail memorialized an oral contract for the purchase of Lot 11 from Yellowstone Development for $1,000,000. The contract provided that LeMond would receive an offset of $100,000 for each new member whom LeMond was able to "bring in" to the Yellowstone Mountain Club. The offset was allowed up to the amount of the entire purchase price, so LeMond would receive the property without paying any money if he brought in ten new members.

¶9 Blixseth acknowledged that he engaged in negotiations on behalf of Yellowstone Development to this effect, but denied that a contract was ever created. The e-mail also stated that Blixseth wanted to "try to get [a contract] put together in the near future." Later communications between Blixseth and LeMond occurred, but there was never a formal contract signed by both parties. LeMond engaged in various subsequent efforts to promote the Yellowstone Mountain Club. He claims that these efforts fulfilled his obligations under the alleged contract.

¶10 Yellowstone Development discovered that various civil engineering and entitlement issues likely rendered Lot 11 undevelopable. To remedy this, Yellowstone Development combined Lot 11 with twenty-three acres of additional undeveloped property in December 2005. The new, larger property was replatted as Lot 11A. In March 2006, Yellowstone Development traded Lot 11A to YSC, LLC, in exchange for Lot 102A, and subsequently subdivided Lot 102A into five new lots. These lots were

4

named the Overlook Lots. In an affidavit, Blixseth claimed that the original Lot 11 was 5.09 acres and the total acreage of all five Overlook Lots is 28 acres.

¶11 LeMond filed his first complaint on January 23, 2007, against Yellowstone Development, Yellowstone Mountain Club, and Blixseth Group, Inc. On June 14, 2007, LeMond amended his complaint to add several claims, including unjust enrichment and the creation of a constructive trust. LeMond argued, among other things, that Yellowstone Development was under an equitable duty to convey the Overlook Lots to LeMond based on its failure to covey Lot 11 pursuant to the contract. On the same day, LeMond filed a Notice of Lis Pendens on the Overlook Lots to notify potential purchasers of his constructive trust claim for title to the Overlook Lots. LeMond filed a second amended complaint on August 17, 2007, adding Blixseth individually as a party.

¶12 On September 17, 2007, LeMond filed a motion for partial summary judgment on the issue whether a contract existed. Meanwhile, Yellowstone Development moved to expunge LeMond's lis pendens. Following a hearing, both motions were denied in open court on April 14, 2008.

¶13 Blixseth and a partner formed Overlook Partners in March 2008 for the purpose of purchasing the Overlook Lots from Yellowstone Development. Overlook Partners bought the Overlook Lots for $15,000,000 on April 3, 2008. The deed conveying the Overlook Lots from Yellowstone Development to Overlook Partners stated that the conveyance was "SUBJECT, HOWEVER" to LeMond's lis pendens and claim for title to the Overlook Lots against Yellowstone Development. After the purchase, Blixseth

personally held a promissory note made by Overlook Partners for $15,000,000, which was secured by a mortgage on the Overlook Lots. Blixseth later assigned the note and the mortgage to Lampe.

¶14 In November 2008, both the Yellowstone Mountain Club and Yellowstone Development filed for bankruptcy in the U.S. Bankruptcy Court for the District of Montana. The bankruptcy proceedings were consolidated. On February 9, 2009, due to the bankruptcy, the District Court stayed the proceedings in this case. LeMond filed a claim in the consolidated bankruptcy action for $15,000,000 based on the alleged breach of the Lot 11 contract. On March 20, 2009, Overlook Partners filed a claim in the bankruptcy action, asserting that it owned the Overlook Lots and that Yellowstone Development was obligated to defend and indemnify it against LeMond's claim.

¶15 On June 2, 2009, the Bankruptcy Court adopted the Third Amended Plan of Reorganization. This plan called for the creation of the Yellowstone Club Liquidating Trust (YCL Trust) to manage the assets of Yellowstone Development and Yellowstone Mountain Club in bankruptcy. YCL Trust is the successor in interest to Yellowstone Development and Yellowstone Mountain Club. YCL Trust is responsible for liquidating the assets in and managing claims against the Yellowstone Development and Yellowstone Mountain Club bankruptcy estates.

¶16 On January 26, 2010, YCL Trust and LeMond filed a stipulated motion in the bankruptcy action (referred to in this Opinion as the "Bankruptcy Stipulation") to settle LeMond's claim against Yellowstone Development. YCL Trust determined that

6

LeMond's claim should be allowed in the amount of $650,000 and agreed to lift the bankruptcy stay to allow LeMond to pursue title to the lots in the District Court action. YCL Trust stipulated that a contract for the sale of Lot 11 to LeMond existed, but YCL Trust retained the right to defend against LeMond's claim in the District Court at its discretion. The bankruptcy court accepted the stipulation on June 15, 2010.

¶17    On November 2, 2010, the U.S. District Court for the District of Montana reversed and remanded the Third Amended Plan of Reorganization in the appeal from the bankruptcy court. Meanwhile, in the recently rekindled action before the District Court, YCL Trust decided not to contest LeMond's claim. On November 24, 2010, YCL Trust and LeMond filed a stipulated motion for entry of judgment in the District Court. Once again, YCL Trust stipulated to the existence of a contract with LeMond. This time, however, YCL Trust additionally stipulated to the existence of a constructive trust in favor of LeMond for the Overlook Lots and stipulated that LeMond's claim took priority over any claims arising after June 14, 2007, because of the lis pendens. For the sake of clarity, this stipulated motion before the District Court is referred to in this opinion as the "Constructive Trust Stipulation." The District Court entered judgment on the same day the motion was filed, awarding LeMond a constructive trust to the Overlook Lots.

¶18    On January 21, 2011, Blixseth filed a motion for relief from the judgment pursuant to M. R. Civ. P. 60(b). On April 4, 2011, the District Court denied the Rule 60(b) motion. LeMond filed a fourth amended complaint on April 28, 2011, alleging a single count of quiet title to the Overlook Lots. LeMond added Lampe and Overlook Partners

7

as defendants, but did not include Blixseth Group, Inc. Blixseth, individually, and Overlook Partners filed counterclaims against LeMond. On June 5, 2012, LeMond moved for summary judgment on his quiet title claim against Overlook Partners and Lampe, arguing that the lis pendens barred the defendants from receiving title. LeMond also filed a motion to dismiss several affirmative defenses on August 3, 2012, and a motion for summary judgment against Blixseth individually on August 14, 2012.

¶19 On November 28, 2012, the District Court granted LeMond's motion for summary judgment against Blixseth and granted LeMond's request to prohibit the defendants from attacking the validity of the contract between Yellowstone Development and LeMond. In the same order, the District Court denied LeMond's motion for summary judgment on the quiet title claim against Overlook Partners and LeMond. The court explained that summary judgment was not proper because a lis pendens cannot create substantive rights.

¶20 On March 22, 2013, LeMond filed another motion for summary judgment, this time clarifying that his substantive right to title did not depend on the lis pendens. LeMond argued that the lis pendens was significant only to show that the District Court's order approving the stipulations between YCL Trust and LeMond took precedence over Overlook Partners' purchase of the lots from Yellowstone Development. The District Court granted this motion at a May 13, 2013 hearing. Final Judgment was entered on June 21, 2013, quieting title to all five Overlook Lots in favor of LeMond. Blixseth, Overlook Partners, and Lampe appeal. LeMond cross-appeals the District Court's failure

to cancel the appellants' deed and mortgage in light of the quiet title judgment in his favor.

## STANDARDS OF REVIEW

¶21 This Court reviews a district court's grant of summary judgment de novo. *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 21, 368 Mont. 330, 296 P.3d 450. Summary judgment is appropriate if the evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56.

¶22 Quiet title actions are actions in equity. *Johnson v. Estate of Shelton*, 232 Mont. 85, 88, 754 P.2d 828, 830 (1988). In reviewing a district court's exercise of its equitable powers, this Court is required to review "all questions of fact arising upon evidence presented in the record" to determine if the court's findings are clearly erroneous. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, 36 P.3d 408 (citation omitted). We determine if the court's interpretation of the law is correct. *Kauffman*, ¶ 11.

## DISCUSSION

¶23 *1. Whether the District Court erred when it dismissed Blixseth from this action.*

¶24 The District Court dismissed Blixseth from this case on the basis that he does not claim title to the Overlook Lots and he has no individual standing to pursue any counterclaims. Blixseth does not own or hold any direct interest in the Overlook Lots.

9

He also lacks a personal interest in the mortgage on the Overlook Lots currently held by Lampe.

¶25 Standing is a threshold requirement in every case. *Baxter Homeowners Assn. v. Angel*, 2013 MT 83, ¶ 14, 369 Mont. 398, 298 P.3d 1145. Standing to appeal requires "a direct, immediate and substantial interest in the subject which would be prejudiced by the judgment or benefited by its reversal." *Mont. Power Co. v. Mont. Dept. of Pub. Serv. Reg.*, 218 Mont. 471, 480, 709 P.2d 995, 1000-01 (1985). Although Blixseth appeals the disposition of the Overlook Lots to LeMond and makes many arguments regarding why he believes the District Court erred in this matter, he does not argue on appeal that his individual dismissal was improper. Blixseth argues instead that denying property owners the right to a hearing is a deprivation of property without due process. Such a right applies, however, only to parties who assert an ownership interest in the property. Similarly, his challenges to the authority of YCL Trust and the court's decision not to expunge the lis pendens cannot be raised absent a personal interest in the outcome of the litigation.

¶26 We agree with the District Court that Blixseth's claims of a personal interest are not persuasive. Blixseth transferred all of his interests in the Overlook Lots to either Overlook Partners or Lampe. *See Bar Ok Ranch Co. v. Ehlert*, 2002 MT 12, ¶ 50, 308 Mont. 140, 40 P.3d 378; *Hjartarson v. Hjartarson*, 2006 MT 273, ¶¶ 52-54, 334 Mont. 212, 147 P.3d 164. The District Court did not err in dismissing Blixseth. Because he has

10

no personal interest in this litigation, his arguments on appeal do not require further discussion.

¶27    *2. Whether Overlook Partners and Lampe obtained their interests in the Overlook Lots subject to the outcome of LeMond's claim against Yellowstone Development.*

¶28    A lis pendens preserves the status quo with regard to property interests throughout a legal action and binds third parties claiming an interest in property to the outcome of pending litigation. *Fox v. Clarys*, 227 Mont. 194, 196, 738 P.2d 104, 105 (1987). A lis pendens serves to "hold the subject matter of litigation within the jurisdiction and control of the court during the pendency of an action so that any final relief granted by the court would be at once binding and effective." *Fox*, 227 Mont. at 196, 738 P.2d at 105; *Conn. v. Doehr*, 501 U.S. 1, 29, 111 S. Ct. 2105, 2122 (1991) (Rehnquist, J., concurring) (a notice of lis pendens causes the established interest to relate back to the date of the filing of the lis pendens). The doctrine of lis pendens provides the legal system the control and assurance that judgments may be carried out in favor of the prevailing party. Richard R. Powell, *Powell on Real Property* vol. 14, § 82A.01, 6 (Michael Allan Wolf ed., LexisNexis 2014).

¶29    A lis pendens "generally renders third persons who subsequently purchase or encumber an interest in the subject property bound by the final disposition of the action." *Fox*, 227 Mont. at 196, 738 P.2d at 105. The property still may be transferred, but the purchaser takes the property subject to the judgment in the pending litigation. Powell, *Powell on Real Property*, at § 82A.01, 3. This means that the purchaser of property subject to a lis pendens receives only "'whatever title remains in his vendor at the

11

termination of the suit.'" *See Hamman v. S.W. Gas Pipeline, Inc.*, 821 F.2d 299, 304 (5th Cir. 1987) (quoting 1 Tex.Jur.3d Actions § 289 (1979)); *Gookin v. Huntley*, 254 Mont. 302, 304-05, 837 P.2d 412, 414 (1992). "If the litigation is won by the grantor, the conveyance is effective. If not, the grantee may acquire nothing." *Hamman*, 821 F.2d at 304.

¶30 As this authority makes clear, because Overlook Partners purchased the Overlook Lots after the lis pendens was recorded, it is "bound by the final disposition of the action." *Fox*, 227 Mont. at 196, 738 P.2d at 105. Thus, although Overlook Partners acquired an interest in the lots before the Constructive Trust Stipulation was entered, once LeMond obtained judgment in his favor, LeMond's title was considered recorded on the date of the lis pendens, which occurred before the sale to Overlook Partners. This makes the conveyance to Overlook Partners void. Section 70-21-304, MCA (Conveyance void as against other conveyance recorded first). Lampe's ability to foreclose on its mortgage is contingent upon Overlook Partners' valid title. Because the security interest in the Overlook Lots created by Lampe's mortgage depends on Overlook Partners' holding title to the lots, Lampe's security interest in the lots also is void.

¶31 Overlook Partners argues that Montana's lis pendens statute is unconstitutional because the filing of a lis pendens constitutes a taking in violation of both the United States and Montana Constitutions. The Takings Clause of the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Montana Constitution states that "[p]rivate

12

property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner." Mont. Const. art. II, § 29. Overlook Partners claims that the lis pendens statute is "a prejudgment remedy that effectuates the taking of a property interest" by temporarily rendering the property unmarketable. In support of this argument, Overlook Partners cites to two cases that do not involve the filing of a lis pendens. *Fuentes v. Shevin*, 407 U.S. 67, 84, 92 S. Ct. 1983, 1996 (1972) (property deprivation based on a writ of replevin); *N. Ga. Finishing v. Di-Chem, Inc.*, 419 U.S. 601, 95 S. Ct. 719 (1975) (Georgia garnishment statute).

¶32 Overlook Partners' argument fails because a lis pendens is not a remedy. A lis pendens only protects a party's ability to recover if a judgment is in its favor. A lis pendens does not create substantive rights; it merely puts prospective purchasers on notice of a pending suit involving an issue of title to the real property. *Doehr*, 501 U.S. at 29, 111 S. Ct. 2122. Here, the lis pendens functioned exactly as intended. The lis pendens provided notice to potential purchasers of the property, including Overlook Partners, that LeMond claimed title to the Overlook Lots. Overlook Partners knowingly acquired only that interest held by Yellowstone Development at the termination of LeMond's action. Because Overlook Partners took the property subject to LeMond's claim, it was not deprived of a constitutionally-protected property interest.

¶33 Overlook Partners argues next that the District Court erred by allowing the lis pendens to remain on the property because "LeMond's claim is grounded in money

13

damages." This Court has held that a "lis pendens is not a tool for a litigant to secure a potential money judgment by tying up a debtor's real property." *West v. Club at Spanish Peaks L.L.C.*, 2008 MT 183, ¶ 61, 343 Mont. 434, 186 P.3d 1228 (citations omitted). In *West*, we observed that "[c]ourts generally reject the notion that a lis pendens is appropriate in cases where no specific relief is sought which affects in some way the title, possession, use, or incidents of real property." *West*, ¶ 61. In *West*, we upheld the determination that a lis pendens was improper when filed solely on the basis that a property transfer gave rise to the plaintiff's claim for damages for lost business opportunities and revenues. We have not, however, strictly construed this limitation on the lis pendens statute. Rather, we have held that an "actual claim to title or possession of the subject property" is not required when the action underlying a lis pendens might affect the title or right of possession of real property. *Paulson v. Lee*, 229 Mont. 164, 168, 745 P.2d 359, 361 (1987).

¶34 Overlook Partners' argument misses its mark because LeMond's claim for a constructive trust alleged facts that, if successful, actually would affect "in some way the title, possession, use, or incidents of real property." *West*, ¶ 61. LeMond asserted that his contract with Yellowstone Development contemplated his acquisition of title to land if he fulfilled his obligations, which he claimed that he did. The District Court correctly rejected Overlook Partners' argument.

¶35 Lampe argues that summary judgment against it should be set aside because the Constructive Trust Stipulation, upon which the court relied in granting judgment, does

not "bind" Lampe. Lampe asserts that it was not named as a party when the November 24, 2010 judgment was entered and therefore is not bound by the judgment. Lampe's argument misunderstands the effect of the lis pendens and of the judgment on its claim to the Overlook Lots. Lampe does not dispute that it accepted assignment of the note and mortgage on the Overlook Lots after LeMond's lis pendens was filed. Because Lampe's security interest in the Overlook Lots is conditioned on Overlook Partners holding title to the Overlook Lots, Lampe's contractual interest in the lots disappears along with that of Overlook Partners, regardless of when Lampe was added as a defendant in this action.

¶36 Overlook Partners and Lampe decry the unfairness of their property interests being subject to YCL Trust's decision to settle. This Court has noted that the doctrine of lis pendens "often provides harsh results and generally has not been extended by courts without strict necessity." *Fox*, 227 Mont. at 196-97, 738 P.2d at 105. Here, however, the lis pendens is necessary to protect LeMond's interests, which could be recorded only by way of a lis pendens as there was no written contract. Overlook Partners and Lampe both acquired their interests with notice of LeMond's claim, a fact confirmed by the express language in the agreements conferring those interests. Thus, Overlook Partners and Lampe knowingly put themselves in a position where their interests were subject to prior litigation in which they were not parties and over which they had no control. The purchaser of property who has notice of another claim through a lis pendens proceeds at its own risk. *See Hamman*, 821 F.2d at 304; *Hidden Meadows Dev. Co. v. Mills*, 590

15

P.2d 1244, 1247 (Utah 1979). The District Court correctly held that Overlook Partners took title to the Overlook Lots subject to LeMond's lis pendens.

¶37    *3. Whether Overlook Partners or Lampe may challenge the stipulations between LeMond and Yellowstone Development's bankruptcy trustee.*

¶38    Overlook Partners and Lampe assert various challenges to the stipulations between LeMond and YCL Trust. Overlook Partners argues that YCL Trust is judicially estopped from asserting claims different from those asserted by Yellowstone Development, that the alleged contract between LeMond and Yellowstone Development does not satisfy the statute of frauds, and other issues regarding possible corruption or YCL Trust's inability to stipulate. Lampe argues similarly that the Constructive Trust Stipulation was the result of misconduct between YCL Trust and LeMond.

¶39    First, Overlook Partners argues that judicial estoppel prevents YCL Trust from making claims different from those previously asserted by Yellowstone Development. The purpose of judicial estoppel is to protect the integrity of the judicial system. *Kauffman*, ¶ 15. The doctrine of judicial estoppel binds a party to its judicial declarations and precludes a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding. *Kauffman*, ¶ 15. The elements of judicial estoppel are:

  1) the party being estopped must have knowledge of the facts at the time the original position is taken;
  2) the party must have succeeded in maintaining the original position;
  3) the position presently taken must be actually inconsistent with the original position; and

16

4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party.

*Traders State Bank v. Mann*, 258 Mont. 226, 243, 852 P.2d 604, 614 (1993), *overruled on other grounds by Turner v. Mt. Eng'g & Constr.*, 276 Mont. 55, 59, 915 P.2d 799, 802 (1996).

¶40 The second element has not been satisfied here. Yellowstone Development did not "succeed" in contesting facts later stipulated by YCL Trust. To satisfy this element, a party "must have been at least successful in arguing its original position against the party asserting the estoppel." *Mann*, 258 Mont. at 243, 852 P.2d at 614-15 (citing *DeMers v. Roncor, Inc.*, 249 Mont. 176, 180-81, 814 P.2d 999, 1002 (1991)). The record contains no evidence that Yellowstone Development successfully maintained its original arguments before the District Court prior to the bankruptcy filings and stay of the proceedings. As Yellowstone Development's successor in this litigation, YCL Trust became vested with the authority to make decisions on Yellowstone Development's behalf, including decisions regarding settlement and stipulations to resolve factual disputes.

¶41 Overlook Partners makes arguments based on LeMond's failure to satisfy the Statute of Frauds and on YCL Trust's lack of authority to stipulate regarding the alleged contract on behalf of Yellowstone Development. The trouble with these arguments—and with other arguments the Appellants raise regarding the contract between LeMond and Yellowstone Development—is that the existence of a contract already has been

17

conclusively established by the Bankruptcy Court. The doctrine of the law of the case is the practice of courts "'generally to refuse to reopen what has been decided.'" *Houden v. Todd*, 2014 MT 113, ¶ 45, 375 Mont. 1, 324 P.3d 1157 (quoting *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352). The law of the case doctrine applies to coordinate courts, including federal court decisions in related litigation. *Houden*, ¶ 45 (citing Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* vol. 18B, § 4478.4, 770 (2d ed., West 2002)). Allowing the Appellants to relitigate issues already determined by the bankruptcy court "disregards the comity afforded to a coordinate court." *Houden*, ¶ 45.

¶42 Blixseth and Overlook Partners raised the same arguments before the Bankruptcy Court, attacking the stipulation that a contract existed. After a careful review of the facts and consideration of the applicable law, the Bankruptcy Court determined that the Bankruptcy Stipulation between LeMond and YCL Trust was fair and equitable, including the stipulation that a contract for LeMond's acquisition of Lot 11 existed. The Bankruptcy Court made its decision after considering the probability of LeMond's success in the litigation, the difficulties involved in the matter of collection, the complexity of the litigation involved, and the paramount interest of the creditors and a proper deference to their reasonable views of the premises. *In re Yellowstone Mt. Club, LLC*, 2010 Bankr. LEXIS 2000, 2010 WL 2483986 (Bankr. D. Mont. June 15, 2010) (citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)). The validity of the Bankruptcy Stipulation, regarding the existence of a contract with

18

LeMond, already has been established by the Bankruptcy Court and is the law of the case. This Court is not a proper forum for appellate review of the Bankruptcy Court. The only issues remaining in the reinitiated District Court action were whether LeMond was entitled to a constructive trust, the scope of that trust and whether the trust took priority over other interests acquired after the lis pendens. When the stay of the District Court proceedings lifted, the question whether a contract existed between LeMond and Yellowstone Development was no longer at issue.

¶43 Overlook Partners and Lampe also assert misconduct by YCL Trust and LeMond in entering the Constructive Trust Stipulation once the case returned to the District Court. The Bankruptcy Court's order allowed LeMond "to reinitiate the Madison County Case and prosecute it to a judgment regarding LeMond's right to the Overlook Lots." *In re Yellowstone Mt. Club*, 2010 Bankr. LEXIS at 4. The order further provided that the trustee, in his discretion, "may choose to defend against such efforts or may allow such efforts to proceed without objection." *In re Yellowstone Mt. Club*, 2010 Bankr. LEXIS at 4. A bankruptcy trustee is vested with the exclusive power to raise legal claims on behalf of the estate. *Est. of Spirtos v. One San Bernardino Co. Superior Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006). The trustee, already having conceded the existence of a contract, decided to allow LeMond's efforts in this District Court case to proceed without objection. By proceeding with the Constructive Trust Stipulation, the trustee was exercising the discretion expressly afforded him by the Bankruptcy Court's order. Finally, Overlook Partners and Lampe waived any claim that the Constructive

19

Trust Stipulation was the product of collusion between LeMond and the YCL Trustee when they failed to raise an affirmative defense to that effect. M. R. Civ. P. 8(c)(1); *Meadow Lake Ests. Homeowners Assn. v. Shoemaker*, 2008 MT 41, ¶ 31, 341 Mont. 345, 178 P.3d 81; *see Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 667 (Mo. Ct. App. 2008) (collusion must be raised as an affirmative defense to validity of agreement).

¶44 We are not persuaded by the Appellants' arguments. YCL Trust is not judicially estopped from asserting claims different from those asserted by Yellowstone Development; the contract arguments already have been settled by the Bankruptcy Court; the trustee acted within his authority and discretion in choosing not to defend against LeMond's complaint; and any suggestion of possible collusion between YCL Trust and LeMond was not properly raised. The District Court correctly held that Overlook Partners and Lampe may not challenge the stipulations of LeMond and YCL Trust.

¶45 *4. Whether the District Court properly exercised its equitable powers in the entry of its final judgment.*

¶46 In its final judgment, the District Court quieted title in favor of LeMond to all five Overlook Lots on the basis of the Constructive Trust Stipulation between LeMond and YCL Trust. "A court creates a constructive trust 'to work an equitable result.'" *N. Cheyenne Tribe*, ¶ 32 (citing *Eckart v. Hubbard*, 184 Mont. 320, 326, 602 P.2d 988, 991 (1979)). In matters involving equity, this Court has a duty to determine all of the issues of the case and to do complete justice. Section 3-2-204(5), MCA; *Kauffman-Harmon*, ¶ 11. The final issue we must consider is whether the District Court properly exercised its equitable powers.

20

¶47 A constructive trust may be imposed where a person wrongfully disposes of the property of another knowing that the disposition is wrongful and acquires in exchange other property. *Restatement (First) of Restitution* § 202 (1937). "[C]onstructive trusts are involuntary in nature and arise by operation of law." *Johnson v. Kenneth D. Collins Agency*, 263 Mont. 137, 140, 865 P.2d 312, 313 (1993). A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he or she were permitted to retain it. Section 72-38-123, MCA; *N. Cheyenne Tribe*, ¶ 30. The imposition of the constructive trust is a remedy for the unjust enrichment. *N. Cheyenne Tribe*, ¶ 39.

¶48 Unjust enrichment is "[t]he retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected." *Owen v. Skramovsky*, 2013 MT 348, ¶ 25, 372 Mont. 531, 313 P.3d 205 (quoting *Black's Law Dictionary* 1536 (Bryan A. Garner ed., 7th ed., West 1999)). "The theory of unjust enrichment requires that a person who has been unjustly enriched at the expense of another must make restitution to the other. . . . The measure of this equitable restitution interest is either the quantum meruit value of plaintiff's labor and materials or the value of the enhancement to the defendant's property." *Robertus v. Candee*, 205 Mont. 403, 408, 670 P.2d 540, 542 (1983) (citations omitted); *Owen*, ¶¶ 31-32.

¶49 Where the defendant's gain is the product not solely of the plaintiff's interest but also of contributions made by the defendant, the measure of restitution is particularly

21

difficult. "There are no easy formulas by which such problems may be decided; instead, the court must resort to general considerations of fairness, taking into account the nature of the defendant's wrong, the relative extent of his contribution, and the feasibility of separating this from the contribution traceable to the plaintiff's interest." George E. Palmer, *The Law of Restitution* vol. 1, § 2.12, 161 (Aspen 1978).

¶50 The District Court did not provide adequate insight into the equitable considerations involved in granting LeMond title to the five Overlook Lots. The District Court focused on the fact that Overlook Partners and Lampe acquired their interests with notice, stating that "the fundamental equitable consideration here is that the Defendants pursued the course of action that they determined upon in 2008 having already been subject to notice of LeMond's claims in 2007." The court also stated that it was "hard pressed to find that substantial inequity is done in connection with [Blixseth's] personal interest" based on other litigation. The District Court, relying on YCL Trust's decision not to defend the action, did not consider whether the stipulations it approved provided an appropriate measure of unjust enrichment between Yellowstone Development and LeMond.

¶51 A constructive trust is created through the court's equitable powers. LeMond's constructive trust encompasses property only "if, in equity and conscience, it belongs to [him]." Dan B. Dobbs, *Law of Remedies* vol. 1, § 4.3(2), 590 (West 1993). LeMond's contract was for the purchase of Lot 11, a five-acre parcel that the parties valued at $1,000,000. Yellowstone Development combined twenty-three acres of additional

22

property with Lot 11 to create Lot 11A, which eventually became the Overlook Lots. The actual value of the Overlook Lots has not been established, but Blixseth claims that each of the five Overlook Lots comprises five acres, individually worth between $2,000,000 and $3,000,000. It is clear from the Bankruptcy Court's order that Yellowstone Development was obligated to transfer Lot 11 to LeMond and was unjustly enriched by failing to do so. However, LeMond is entitled to enforce a constructive trust worth only the equitable value of the parties' bargain.

¶52 The "equity of the transaction must shape the measure of relief." *Beatty v. Guggenheim Exploration Co.*, 389, 122 N.E. 378, 381 (NY 1919). Without adequate findings by the District Court, the question whether the Overlook Lots are the equitable equivalent of Lot 11 cannot be answered. This Court looks favorably on settlements. *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶ 48, 327 Mont. 146, 112 P.3d 1018. We affirm the court's decision to establish a constructive trust in favor of LeMond, but the court must consider whether the trust constitutes the appropriate measure of unjust enrichment, even when the parties have stipulated to the result. Findings must be sufficient to permit review without speculation into the district court's reasoning. *In re the Marriage of Crowley*, 2014 MT 42, ¶ 26, 374 Mont. 48, 318 P.3d 1031. The District Court did not support the award of title to all five Overlook Lots with sufficient findings for us to determine whether the court's unjust enrichment determination was equitable. We reverse the judgment and remand for additional findings on the measure of unjust enrichment. The court may, in its discretion, receive additional evidence on this issue.

23

## CONCLUSION

¶53    For the reasons explained above, LeMond's claim is superior to the claims of Blixseth, Overlook Partners and Lampe.  In exercising its equitable powers, however, the District Court must provide sufficient findings to explain the scope of the restitution awarded.  In light of the possibility that the restitution awarded to LeMond may change on remand, LeMond's cross-appeal, which requests that the District Court cancel the Appellants' deed and mortgage, is not yet ripe for review.

¶54    Affirmed in part, reversed in part, and remanded.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE


Chief Justice Mike McGrath concurring.

¶55    Greg LeMond had an oral contract to purchase a 5-acre apparently undevelopable lot worth $1 million, with no money down as a deposit and an oral agreement for payment terms.

¶56    The Bankruptcy Court per stipulation awarded LeMond $650,000 for his claim on the property and lifted the stay of the quiet title action now in state court.  A second agreement between LeMond and the Trustee was filed in the state action.   That

24

stipulation declares a constructive trust for the benefit of LeMond and agrees he is the rightful owner of 28 acres within the Yellowstone Club with an alleged value of $10 million to $30 million. Judgment in his favor in the quiet title action was entered the same day.

¶57 Clearly equity has not prevailed here. While it is true LeMond has a priority claim by virtue of the lis pendens, he is not entitled to a windfall on all of the Overlook properties.

¶58 Now the state judgment has been reversed and the question that remains for the District Court is to determine the scope of the constructive trust.

¶59 The state proceeding was initiated in 2007 with LeMond seeking damages and contending to have acquired a 5-acre lot in the Yellowstone Club for a purchase price of $1 million. He asserted there was an oral agreement to reduce the price of the lot by $100,000 for every new member he was able to bring into the Yellowstone Club. The parties disputed whether he had performed that part of the agreement but agree he has paid no money. On April 14, 2008, LeMond's motion for summary judgment on the contract claim was denied by the District Court concluding there were material facts still in dispute.

¶60 In February 2009, the District Court proceedings were stayed following the bankruptcy filing. In January 2010, LeMond and the Trustee signed the "Bankruptcy Stipulation" wherein the Trustee agreed there was a valid contract to purchase the property and to value LeMond's claim at $650,000, but retained the right to defend

against LeMond's assertions in state district court. The Bankruptcy Court accepted the stipulation and lifted the stay.

¶61    Subsequently, in the District Court litigation, the Trustee and LeMond executed the "Constructive Trust Stipulation," a much broader arrangement agreeing not only to the validity of the contract, but also that title to the "Overlook Lots" was held in trust in favor of LeMond, and that LeMond "is the rightful owner of such lots and that such lots must be conveyed to him."

¶62    Of course in the meantime the transactions creating the Overlook Lots[1] as described above took place—transactions that have been described by the Bankruptcy Court to have been part of a fraudulent transfer—apparently at the expense of the bankruptcy estate. *Blixseth v. Kirschner (In re Yellowstone Mt. Club, LLC)*, 436 B.R. 598, 2010 Bankr. LEXIS 2702 (Bankr. D. Mont. 2010). LeMond was not a party to those transactions.

¶63    In any event, the record before us does not support the District Court's final determination as to the scope of the constructive trust. Equity does not require an award of title to all 28 acres described as the Overlook Lots and asserted to have a value well in excess of $1 million.

¶64    One significant question that needs to be answered on remand is whether LeMond has received or will be receiving the $650,000 as a cash distribution in the bankruptcy proceedings. If so, that should be an offset to the value of any of the Overlook property

---

[1] The Overlook Lots now consist of approximately 28 acres, subdivided into 5 separate parcels.

awarded to LeMond as part of the constructive trust distribution. The District Court should clarify whether the Overlook properties are part of the bankruptcy estate and therefore subject to claims by other creditors. If not, what are the other creditors' claims to that property?

¶65 A new Trustee has been appointed. The District Court should consider giving the current Trustee the opportunity to participate in the proceedings on remand, given the holding by the Court in this Opinion.

¶66 I concur with the majority Opinion.


/S/ MIKE McGRATH